Carmine CASELLA, Plaintiff–Appellant,

v.

EQUIFAX CREDIT INFORMATION SERVICES, and Trans Union Corporation, Defendants–Appellees.

No. 789, Docket 94–7547.

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1995.

Decided June 5, 1995.

James B. Fishman, New York City (Jerome Greenberg, on the brief), for plaintiff-appellant.

* The Honorable Frank M. Coffin of the United States Court of Appeals for the First Circuit,

Kenneth A. Becker, New York City (Richard R. Lutz, James M. Hershler, Townley & Updike, on the brief), for defendant-appellee Equifax Credit Information Services.

Mark E. Kogan, Marion, Satzberg, Trichon & Kogan, Philadelphia, PA, for defendant-appellee Trans Union Corp.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND and COFFIN,* Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal from a grant of summary judgment in favor of two credit reporting agencies requires us to consider the types of injury that can justify a damages award under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (1988) ("FCRA"). Plaintiff Carmine Casella appeals from the May 11, 1994, judgment of the District Court for the Southern District of New York (Gerard L. Goettel, J.) denying his motion for partial summary judgment, and granting the motions of defendants-appellees Equifax Credit Information Services ("Equifax") and Trans Union Corporation ("Trans Union") for summary judgment as to all claims, dismissing the complaint. Casella also appeals from the subsequent order of the District Court, dated July 27, 1994, denying his motion for partial relief from the judgment, brought pursuant to Fed.R.Civ.P. 60(b)(2). For the reasons stated below, we affirm the judgment and post-judgment ruling of the District Court.

### Background

In June 1993, Casella brought this action against Equifax and Trans Union claiming various violations of the FCRA, including 15 U.S.C. §§ 1681c, 1681i(c), and 1681g(a)(3)(A). Casella alleged, in substance, that appellees had prepared a credit report containing false and defamatory information, and that they had refused either to delete the information or to include a statement of dispute in his credit file after he notified them of the inaccuracy.

sitting by designation.

In March 1992, following the denial of his applications for credit cards at two banks, Casella obtained copies of his credit reports from Equifax and Trans Union, which contained an entry indicating that he had a past due child support obligation in the amount of $4,350 owing to the San Diego County (California) Revenue & Recovery Unit ("San Diego"). Upon receiving those reports, Casella notified appellees that he disputed the accuracy of the San Diego item and provided documentation from the New York State Family Court indicating that the support obligation had been terminated. He also requested that until the matter with San Diego was resolved, appellees include a statement of dispute in his credit report and provided each appellee with a notarized copy of such statement.

Upon receiving Casella's notification, Equifax deleted the disputed entry. As a result, it did not include appellant's statement of dispute in his credit file. One month later, however, the San Diego entry reappeared in Casella's file. Equifax attributes the reappearance to the fact that San Diego again reported the information. Equifax maintains a computerized database composed largely of accounts receivable information supplied monthly by its subscribers on magnetic computer tapes. According to Equifax, when the tapes are loaded into its database, account information is automatically included in a consumer's credit file. Thus, when San Diego continued to report that Casella had a past due obligation, that information was entered in appellant's credit file. Although appellant received updated credit reports from Equifax in July 1992 and February 1993, he did not again notify the company of the inaccurate information from San Diego.

The situation with Trans Union was different. Instead of deleting the disputed entry, as Equifax did, Trans Union investigated the dispute. When the San Diego authorities confirmed the accuracy of the entry, Trans Union informed Casella that it would continue to report the obligation. It did not, however, include a statement of dispute in appellant's file. The District Court apparently thought that appellant had not provided Trans Union a statement of dispute. The record reflects, however, that on June 16, 1992, counsel for Casella requested that a consumer statement be added to appellant's file and sent a notarized copy of a 100–word statement to Trans Union. After receiving updated credit reports, Casella did not again notify Trans Union that he disputed the accuracy of the San Diego entry or request again that the statement of dispute be included in his file.

In the meantime, Casella sought to resolve his dispute directly with San Diego. On October 28, 1992, San Diego informed appellant that he had a zero balance and indicated that it would notify creditors. Equifax and Trans Union deny ever having received notification. In support of his motion for partial relief from the judgment pursuant to Fed. R.Civ.P. 60(b)(2), however, appellant provided copies of two Universal Data Forms, dated October 9, 1992, and February 4, 1993, purporting to transmit delete instructions to both appellees regarding the San Diego item. On November 2, 1992, San Diego wrote to appellant again, this time advising him that he still owed child support. In December 1992, San Diego reported to Equifax and Trans Union that Casella's child support obligation was past due.

The evidence was undisputed that during the period in which appellees reported the San Diego item in Casella's credit file, he did not apply for, and was never denied, any credit. Appellant contends, however, that he refrained from applying for any new credit out of fear that he would be rejected.

After Casella filed his complaint against Equifax and Trans Union, both defendants moved for summary judgment. Casella cross-moved for summary judgment on his claim that appellees had violated 15 U.S.C. § 1681i(c), by failing to include a dispute statement in any subsequent credit report.[1]

---

**1.** Section 1681i(c) provides that:

Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

The District Court denied Casella's motion and granted appellees' motion for summary judgment as to all claims. In so ruling, it considered five issues. First, the Court examined whether appellees had violated 15 U.S.C. § 1681c, by including obsolete data in Casella's credit report.[2] It concluded that the evidence was insufficient to support that claim. Next, the Court considered whether appellees' investigations of the disputed item in Casella's report were sufficient, and ruled that as a matter of law both appellees had acted "reasonably." Turning to appellant's claim for violations of 15 U.S.C. § 1681i(c), the Court found that under the circumstances, appellees were not required to include a statement of dispute in appellant's credit file.

The Court next concluded that Casella had not satisfied his burden of showing that he had suffered any damages as a result of Equifax's or Trans Union's conduct. The District Court rejected Casella's assertions that he was injured because (a) he was discouraged from applying for mortgage loans because the San Diego item was in his credit report and (b) he suffered great emotional distress. In the Court's view, Casella had not shown that appellees, rather than San Diego, were the cause of his injuries. Appellant had also failed to present any evidence of willful noncompliance with any provision of the FCRA, see 15 U.S.C. § 1681n, and thus, punitive damages were inappropriate. Finally, the Court determined that appellant had not presented evidence of either libel or wrongful communication to another credit reporting agency.

Following the District Court's decision and after he filed his notice of appeal in this Court, appellant moved in the District Court for partial relief from the judgment on the grounds of newly discovered evidence. That evidence, as noted above, consisted of two Universal Data Forms accompanied by affidavits from San Diego indicating that appellees had in fact been notified that they should delete the San Diego item. On the basis of this evidence, Casella argued that the District Court's finding that appellees had not acted willfully was erroneous. The District Judge denied Casella's motion on the grounds that (a) the evidence was cumulative, (b) even if not cumulative, it would not have changed the outcome of the case, and (c) the evidence offered could have been discovered earlier with due diligence.

On appeal, Casella raises a host of issues, but because we agree with the District Court that Casella has utterly failed to produce any evidence constituting damages under the FCRA, we need reach only that issue in affirming the judgment of the District Court.

### Discussion

■ The FCRA creates a private right of action against credit reporting agencies for the negligent, see 15 U.S.C. § 1681o, or willful, see id. § 1681n, violation of any duty imposed under the statute. See Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir.1991). For any such violation, the credit reporting agency is liable to the consumer for "actual damages" sustained, the costs of the action together with reasonable attorney's fees and, in the case of willful noncompliance, punitive damages. See id. §§ 1681n, 1681o.

In this case, Casella bears the burden of proving actual damages sustained as a result of appellees' activities. Seeking to meet that burden, he offered in the District Court three types of damages he alleges were sustained as a result of Equifax's and Trans Union's conduct. Those damages include (1) out-of-pocket attorney's fees, (2) pain and suffering, and (3) loss of opportunity in the home mortgage market. We consider each

---

**2.** 15 U.S.C. § 1681c provides that:

(a) Except as authorized under subsection (b) of this section, no consumer reporting agency may make any consumer report containing any of the following items of information:

. . . . .

(6) Any ... item of information which antedates the report by more than seven years.

category of damages and conclude that none of them amounts to compensable damages sufficient to withstand a motion against appellant for summary judgment.

■ 1. *Out-of-pocket attorney's fees.* Appellant argues that he incurred out-of-pocket attorney's fees paid in the course of challenging the inclusion by appellees of the San Diego entry in his credit reports. The District Court did not rule on this aspect of appellant's damages. However, it is clear that as a matter of law, Casella would not be able to recover this element of his damages in an action under 15 U.S.C. §§ 1681n or 1681o.

■ The term "actual damages" may include out-of-pocket expenses for attorney's fees incurred by a plaintiff prior to litigation of his FCRA claims. *See, e.g., Thomas v. Trans Union Credit Information Co.,* 1992 WL 280516, at *4 (N.D.Ill. Oct. 5, 1992). The rationale behind this rule is that a consumer should not have to retain an attorney in order to force compliance with the statute. By the same token, however, prelitigation expenses to retain a lawyer should not be compensable where, as in this case, the lawyer's services were not employed to remedy any violation of the law.

The only evidence Casella presented of his prelitigation expenses is an affidavit of his attorney stating that the attorney charged, and appellant paid, $2,641.83 in connection with letters prepared and sent to Equifax and Trans Union in April 1992, and again to Trans Union in June 1992. These letters were for the purpose of notifying appellees that Casella disputed the accuracy of the San Diego entry and to request the inclusion of statements of dispute in Casella's credit report.

■ Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information. *See, e.g.,* 15 U.S.C. § 1681i(a); *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972, 975 (M.D.Fla.1985); *see also McPhee v. Chilton Corp.,* 468 F.Supp. 494, 498 (D.Conn.1978). Moreover, the credit reporting agency need not include a statement of dispute in a consumer's report until the consumer provides one. *See* 15 U.S.C. § 1681i(c). It is obvious, therefore, that neither Equifax nor Trans Union violated the FCRA *before* they were contacted by Casella in April and June 1992. Appellant's expenses incurred merely to notify appellees of inaccurate credit information, and not to force their compliance with any specific provision of the statute, cannot be compensable as "actual damages" for a violation of the FCRA.

■ 2. *Pain and suffering.* Appellant next contends that he sustained actual damages in the form of pain and suffering, resulting from appellees' inclusion in his credit report of the erroneous San Diego item. In support of this claim, he offered his own affidavit, and that of his companion, Patricia Klees, explaining at length the worry, anxiety, and depression he felt while having to deal with his credit report, which stigmatized him as a "deadbeat father." That anxiety, according to appellant, was exacerbated by the fact that he had applied for a position in the Suffern, New York Volunteer Fire Department—an application, he feared, that might involve a background and credit check. Casella was ultimately accepted into the Volunteer Fire Department. Nevertheless, he argues that he suffered severe emotional distress during the pendency of his application.

In granting appellees' motion for summary judgment, the District Court properly recognized that "actual damages" may include humiliation and mental distress, even in the absence of out-of-pocket expenses. *See Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995); *Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 151 (5th Cir.1983); *Thompson v. San Antonio Retail Merchants Association,* 682 F.2d 509, 513 (5th Cir.1982); *Bryant v. TRW, Inc.,* 487 F.Supp. 1234, 1240 (E.D.Mich.1980), *aff'd,* 689 F.2d 72 (6th Cir. 1982). The Court concluded, however, that appellant was not entitled to pain and suffering damages in this case, because he had failed to show that his emotional distress was caused by Equifax and Trans Union, as opposed to San Diego. Thus, appellant's claims were apparently rejected due to a lack of causation between the harm alleged by Ca-

sella and appellees' alleged violations of the FCRA. *See Cahlin, supra,* at 1161; *Hauser v. Equifax, Inc.,* 602 F.2d 811, 816 (8th Cir. 1979). We think this was proper.

Casella presented no evidence that during the period in which Equifax and Trans Union carried the inaccurate San Diego entry, either of them provided appellant's credit report to any third party. No rational trier of fact could infer from this record that any potential creditor or other person in appellant's community learned of any harmful information from appellees. Casella's argument boils down to the bare contention that he is entitled to damages for pain and suffering simply because he *knew* of an inaccurate and potentially damaging item in his credit report. We are unaware of any case extending FCRA damages that far, *cf. Stevenson v. TRW, Inc.,* 987 F.2d 288, 297 (5th Cir.1993) (plaintiff was denied credit three times and experienced considerable embarrassment from having to discuss his problems with business associates and creditors); *Pinner v. Schmidt,* 805 F.2d 1258, 1265 (5th Cir.1986) (embarrassment resulting from three credit denials and from lengthy dealings with credit bureau), *cert. denied,* 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987); *Thompson, supra,* at 513–14 (humiliation and embarrassment suffered from three denials of credit and fact that credit bureau took several months to correct credit report's inaccuracies); *Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d 829, 834 (8th Cir.1976) ("considerable time spent fighting O'Hanlon's grossly inaccurate reports"), and we decline to reach that result here.

In rejecting Casella's claim for pain and suffering, we note that at least one court has recently held that a cause of action exists under the FCRA even absent a denial of credit. *See Guimond, supra,* at 1333. Whether or not we would agree with *Guimond,* we do not believe a plaintiff can recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency. Appellant has not met his burden of presenting evidence that Equifax or Trans Union caused his pain and suffering.

3. *Loss of opportunity.* The third type of damages appellant claims he suffered is a loss of opportunity in the home loan mortgage market. The substance of that claim is that as a result of appellees' erroneous credit reports, Casella lost the opportunity to take advantage of low mortgage interest rates and low housing prices prevailing during the period in which appellees carried the derogatory San Diego information. Appellant submitted evidence that in 1992, he and his companion were actively seeking to purchase a home, and that at various times during that year they had sufficient resources to obtain an 80 percent home mortgage in Casella's community. Casella concedes, however, that at no time during the relevant period did he actually make an offer to purchase a home, or apply for a mortgage. Instead, he claims, he refrained from making any credit applications in order not to tarnish further his credit history.

Whether or not Casella had the wherewithal to obtain a mortgage, the District Court properly found that, in the absence of any evidence that appellant made an offer to purchase property or applied for a home mortgage, the "lost opportunity" damages he alleged were too speculative. Though appellant cites cases suggesting that loss of opportunity in the mortgage market or a delay in obtaining credit resulting in less favorable terms may constitute compensable damages under the FCRA, *see Bryant v. TRW,* 689 F.2d at 79; *Kreger v. United Credit Service, Inc.,* 1992 WL 414653 (Wis.App. Nov. 25, 1992) (unpublished disposition), we do not find those circumstances present here. *Kreger* involved an attempt by plaintiff to refinance a mortgage he already held. *See id.* at **1. Moreover, there was specific evidence in *Kreger* that a particular bank might have issued a new loan, absent plaintiff's negative credit report. *See id.* at **2. In this case, by contrast, Casella identified no bank that was interested in giving him a home mortgage. Indeed, as noted above, he presented no evidence that any potential creditor bank even received his credit report. Under the circumstances, appellant has completely failed to meet his burden of demonstrating any damages resulting from being deprived

of a loan. *See Ladner v. Equifax Credit Information Services,* 828 F.Supp. 427, 432 (S.D.Miss.1993) (plaintiff withdrew her application for a loan and never reapplied).

4. *Punitive damages.* Casella further argues that even if he is not entitled to any "actual damages," he still may be entitled to punitive damages on the theory that Equifax and Trans Union willfully violated various provisions of the FCRA. *See* 15 U.S.C. § 1681n. As appellant carefully points out, punitive damages may be available even where a plaintiff has sustained no actual damages. *See* 15 U.S.C. § 1681n(2); *Boothe v. TRW Credit Data,* 557 F.Supp. 66, 71–72 (S.D.N.Y.1982). The District Court found that appellant had presented no evidence that either Equifax or Trans Union acted willfully in failing to delete the San Diego entry or to include appellant's statement of dispute in his consumer credit file. Thus, the Court concluded, Casella could not receive punitive damages. We agree that the record is devoid of any evidence supporting a theory of willful noncompliance.

Nor does the evidence Casella presented on his Rule 60(b) motion alter our conclusion. The newly discovered evidence consisted of two Universal Data Forms that apparently transmitted delete instructions to appellees in October 1992 and February 1993. The evidence also demonstrated, however, that San Diego re-reported the past due child support obligation to appellant in November 1992, and to appellees in December 1992. Throughout the relevant period, San Diego was sending mixed signals to Casella, Equifax, and Trans Union. Appellees' course of conduct does not support the kind of "conscious disregard" or "deliberate and purposeful" actions necessary to make out a claim for willful noncompliance under the FCRA. *See Pinner v. Schmidt, supra,* at 1263 (vacating award of punitive damages); *Nitti v. Credit Bureau of Rochester, Inc.,* 84 Misc.2d 277, 375 N.Y.S.2d 817, 821 (Sup.Ct. 1975) (awarding punitive damages when "[t]ime and again plaintiff came to defendant's office and went over the same credit information ... all to no purpose"); *Millstone, supra,* at 835 (awarding damages

where defendant "trampl[ed] recklessly upon Millstone's rights").

The District Court did not abuse its discretion in rejecting appellant's Rule 60(b) motion on the ground that the evidence offered, even if "newly discovered," would not have resulted in a different outcome on summary judgment.

Affirmed.