Santo **CALTABIANO**, Plaintiff,

v.

**BSB BANK & TRUST CO.**, Equifax, Inc., Trans Union LLC, Experian Information Solutions, Inc., and Capital One Services, Inc., Defendants.

No. 03–CV–2566 JS ARL.

United States District Court, E.D. New York.

Aug. 8, 2005.

Michael G. McAuliffe, Esq., Law Offices of Michael G. McAuliffe, Melville, for Plaintiff.

Alyssa M. Barreiro, Esq., Hinman, Howard & Kattell, LLP, Binghamton, Lewis P. Perling, Esq., Kilpatrick Stockton LLP, Atlanta, GA, Timothy P. Creech, Esq., Satzberg, Trichon, Kogan & Wertheimer, PC, Philadelphia, PA, Albert J. Rota, Esq., Jones Day, New York, for Defendants: BSB Bank & Trust Co., Equifax, Inc., Trans Union LLC, Experian Information Solutions, Inc.

## MEMORANDUM & ORDER

SEYBERT, District Judge.

On April 14, 2003, Plaintiff, Santo Caltabiano ("Plaintiff" or "Caltabiano") commenced this action in the Supreme Court of New York, Suffolk County. Thereafter, the case was removed to this Court. Plaintiff alleges Defendants BSB Bank & Trust Co. ("BSB"), Equifax, Inc. ("Equifax"), Trans Union LLC ("Trans Union"), and Experian Information Solutions, Inc. ("Experian"), violated several provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and Section 380 of the New York Business Law. Specifically, Plaintiff alleges he suffered damages as a result of inaccurate credit information furnished by BSB to Equifax, Experian, and Trans Union ("credit reporting agencies" or "CRAs"), which then provided this information to potential lenders.

Pending before this Court are motions for summary judgment by Defendants BSB, Equifax, Trans Union, and Experian (collectively "Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants assert that some of Plaintiff's claims are barred by the FCRA's statute of limitations. They also assert there is no evidence to support economic damages or emotional distress damages as a result of the alleged error in Plaintiff's credit report.

As discussed below, this Court finds that there are no material issues of fact to be determined and that the Defendants are entitled to judgment as a matter of law. Thus, this Court GRANTS Defendants' motions for summary judgment.

## I. BACKGROUND

In 1994, Plaintiff obtained an installment loan, which was ultimately assigned to BSB. Pretrial Facts ¶ 4. BSB, a furnisher of consumer information to the Credit Reporting Agencies, reported from March 1999 until November 30, 2001 Plaintiff was once 30 days late on a payment to BSB ("BSB tradeline"). Id. at ¶¶ 2, 6. Although BSB and Plaintiff dispute whether the report of the late payment was accurate, for the purposes of this motion the BSB tradeline will be considered not accurate.

### A. History of Late BSB Tradeline

In May 2001, Plaintiff contends he contacted both BSB and Experian concerning errors in his credit report. Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Aff.") ¶ 9; Compl. ¶ 14. Although Experian disputes the content of these communications, it will be assumed Plaintiff contacted both BSB and Experian to get the error removed from his credit report. Plaintiff's alleged contacts with Experian were on May 20 and 25, 2001. Aff. of Kira

Williams in Support of Experian's Mot. for Summ. J. ("Williams Aff.") ¶¶ 8–9.

On October 1, 2001, Plaintiff sent a letter with enclosures to Experian disputing the BSB tradeline. Pl.'s Aff. ¶ 12; Williams Aff. ¶ 13. The enclosures included cancelled checks providing evidence of a timely payment to BSB. Pl.'s Aff. ¶ 12. The letter did not contain Plaintiff's social security number, and was returned with a blank form requesting additional identification information. Williams Aff. ¶¶ 11–12. Shortly thereafter, on October 24, 2001, Experian received an updated version of the letter which included Plaintiff's social security number and requested an investigation of the BSB account. Id. at 14; Experian's 56.1 Stmt. ¶ 23. Experian began its investigation and sent a Consumer Dispute Verification ("CDV"), dated November 12, 2001, to BSB concerning Plaintiff's late payment. BSB's 56.1 Stmt. ¶ 8; Pl.'s Aff. ¶ 13. On November 19, 2001, BSB notified Experian that the BSB tradeline was accurate and the 30–day late delinquency was correct. Experian's 56.1 Stmt. ¶ 28; BSB's 56.1 Stmt. ¶ 9. Although it is disputed, it will be assumed that on December 5, 2001, BSB sent CRAs a Universal Data Form ("UDF") to remove the 30–day delinquency notation because of a BSB reporting error. BSB's 56.1 Stmt. ¶¶ 10–13.

On July 12, 2002, a United States Congressman contacted Experian concerning Plaintiff's credit report. Pretrial Facts ¶ 10. On July 15, 2002, Experian removed the 30–day late derogatory notation on the BSB account. Pretrial Facts ¶ 7. On August 2, 2002, after receiving a letter from the Congressman, Equifax also deleted the derogatory notation on Plaintiff's BSB account. Pretrial Facts ¶ 8. Trans Union and Plaintiff dispute whether the late payment notation was removed in June 2002 or December 2001. *See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 3; Trans Union's Mem. in Supp. of Mot. for Summ. J. at 3. However, the Court will assume that Trans Union removed the late payment from Plaintiff's credit report in June 2002.

## B. *Plaintiff's Loan History After Late BSB Tradeline*

In 2000, Plaintiff applied for a home equity loan with South Trust Bank and was denied. Pl.'s Dep. Test. pp. 15–17. In April 2001, Plaintiff applied for a $50,000 home equity loan from Chase Manhattan Bank. Id. at p. 29. On April 10, 2001, Chase Manhattan Bank denied the loan, and instead offered a loan in the amount of $15,000. Experian's 56.1 Stmt. ¶ 12. In May 2001, Plaintiff allegedly had a phone conversation with a GMAC representative who informed him he had derogatory statements on his credit report. Pl.'s Dep. Test. pp. 22–26. At that time, Plaintiff also had a Bank of New York derogatory remark on his credit report. Id. at 25. Allegedly, the GMAC representative told Plaintiff not to apply for a loan, and he failed to submit a written application. Id. at 22–25.

On September 21, 2001, through mortgage broker Dunhill Funding, Plaintiff submitted a written loan application for a $55,000 home equity loan at a 7.00% interest rate to Wells Fargo Mortgage, Inc. Id. at 36–37. Approximately one month later, the loan was approved at an interest rate of 7.125%. Id. At this time, the BSB tradeline appeared on Experian's Credit report. Experian's 56.1 Stmt. ¶ 22. Plaintiff alleges that he had to pay a higher rate of interest because of the inaccurate derogatory entry. Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 13. Plaintiff states that Peter Pisciotto ("Pisciotto"), owner of Dunhill Funding, will provide testimony to the actual economic damages caused from

the erroneous derogatory entries. *Id.* at 13; Joint Pretrial Order p. 15. However, Pisciotto has already stated that the interest rate was one eighth higher than what Plaintiff applied for because of market fluctuation and not because of derogatory information contained in Plaintiff's credit reports. Pisciotto Decl. ¶¶ 4–5.

## II. *STANDARD FOR SUMMARY JUDGMENT*

A district court may properly grant summary judgment only "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). The moving party bears the initial burden of proving there is no genuine issue of material fact. *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). Additionally, "[t]he court must resolve all ambiguities and draw all inferences in favor of the non-moving party." *Westinghouse Credit Corp. v. D'Urso,* 278 F.3d 138, 145 (2d Cir.2002) (citing *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

Once the moving party has properly supported their motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88

S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "Where the record taken as a whole could not lead to a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank,* 391 U.S. at 289, 88 S.Ct. 1575).

It is within this framework that the Court addresses the instant summary judgment motion.

## III. *DISCUSSION*

The Court has jurisdiction over this case based upon the Defendants' alleged FCRA violations. The FCRA was enacted to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). "In addition to regulating the conduct of credit reporting agencies ... [f]urnishers of information also have a duty to provide accurate information and must correct inaccuracies when notified by a consumer reporting agency." *Trikas v. Universal Card Services Corp.,* 351 F.Supp.2d 37, 41 (E.D.N.Y.2005)(citing 15 U.S.C. § 1681s–2).

Under 15 U.S.C. §§ 1681n, 1681o, there is a private right of action against credit reporting agencies for any willful or negligent "violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Services,* 56 F.3d 469, 473 (2d Cir. 1995). "For any such violation, the credit reporting agency is liable to the consumer for 'actual damages' sustained ...." *Id.* (citing 15 U.S.C. §§ 1681n, 1681o).

## A. *Statute of Limitations*

█ Pursuant to 15 U.S.C. § 1681p, Plaintiff's claims for alleged damages stemming from loan denials prior to April 14, 2001, are barred because they do not fall "within two years from the date on which the liability arises." 15 U.S.C. § 1681p, Pub.L. No. 91–508 (1970) (prior to 2003 amendment). Accordingly, Plaintiff cannot recover for alleged damages from the denials by South Trust Bank in 2000, and Chase Manhattan Bank in April 2001. *See Lucchesi v. Experian Info. Solutions, Inc.*, No. 03–CV–2633, 2003 WL 21542317, at *2 (S.D.N.Y. July 7, 2003)(holding that any FCRA claim based on a report that predated the filing of the complaint by more than two years is time barred). Further, Plaintiff does not dispute that these claims fall outside of the statute of limitations. Accordingly, the claims based on the denials from South Trust Bank and Chase Manhattan Bank are dismissed.

## B. *GMAC Credit Denial*

Credit reporting agencies have the duty when there is disputed credit information to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate ...." 15 U.S.C. § 1681i(a). The agencies have thirty days to conduct this reinvestigation after receiving "notice of the dispute from the consumer or reseller." *Id.*

█ Here, Plaintiff has raised an issue of fact as to whether the CRAs conducted a timely and reasonable reinvestigation. Nevertheless, "[p]rior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information." *Casella*, 56 F.3d at 474 ("[N]either Equifax nor Trans Union violated the FCRA *before* they were contacted by Casella ...."). Prior to the UDF sent by BSB on December 5, 2001,

Trans Union and Equifax did not have any notice of a potential inaccuracy in Plaintiff's report. Consequently, Trans Union and Equifax cannot be held liable for GMAC's credit denial that occurred in May 2001.

Plaintiff allegedly contacted Experian concerning the inaccuracy on his credit report in May 2001. Even accepting this as true, Plaintiff's loan denial from GMAC is not a result of Experian's failure to reinvestigate in a timely manner. According to Plaintiff, he contacted Experian on May 20, 2001, and May 25, 2001. However, GMAC requested Plaintiff's credit report on May 14, 2001. *See* Williams Dec. Ex. A at 8. As a result, Experian did not have notice of any inaccuracy prior to Plaintiff's discussions with GMAC, and thus, cannot be held liable for this denial.

Therefore, any claims concerning the GMAC credit denial are also dismissed.

## C. *Claims Against BSB*

█ BSB is a furnisher of information and not a "consumer reporting agency" as defined by § 1681a(f). BSB's Mem. in Supp. of Mot. for Summ. J. at 8. Plaintiff has not refuted this assertion. As a result of not being a "consumer reporting agency", claims against BSB under 15 U.S.C. §§ 1681e, 1681g, and 1681i are dismissed. *See Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1557 (11th Cir.1985)(holding that only a consumer reporting agency can be held liable for claims under the FCRA).

█ BSB asserts the only viable claim against a furnisher of information would fall under 15 U.S.C. § 1681s–2. There is no private right of action under § 1681s–2(a). *See Trikas v. Universal Card Services Corp.*, 351 F.Supp.2d 37, 45 (E.D.N.Y.2005). A claim can be brought against a furnisher of information under § 1681s–2(b). *See id.* A furnisher's

duties under § 1681s–2(b) include, *inter alia,* to "conduct an investigation with respect to the disputed information," after receiving notice from a consumer reporting agency. 15 U.S.C. § 1681s–2(b)(1). In this case, Defendant asserts they have complied with § 1681s–2(b). *See* BSB's Mem. in Supp. of Mot. for Summ. J. pp. 10–12. This Court finds that Defendant BSB has complied with their statutory duty. Plaintiff has not set forth any claims under § 1681s–2(b), and the claims against BSB are dismissed.

### D. *Damages*

 To maintain a claim under the FCRA, Plaintiff bears the burden of demonstrating "actual damages sustained" as a result of the Defendants' activities. *See Casella,* 56 F.3d at 473. In addition to the economic damages stemming from the credit denial from GMAC, Plaintiff also alleges damages as a result of paying a higher interest rate on his loan from Wells Fargo. Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. p. 13. However, Plaintiff has not provided sufficient evidence in support of his claim, other than the testimony of his mortgage broker, Pisciotto, who has already stated the interest rate was higher because of interest rate market fluctuation and not his credit report. Plaintiff has not presented any evidence to refute Pisciotto's statement, and consequently, this claim must be dismissed.

Plaintiff also alleges emotional distress damages as a result of the inaccurate BSB tradeline. Plaintiff argues that as a result of numerous creditors reviewing Plaintiff's inaccurate credit report, as well as having to discuss his credit problems with creditors and a Congressman, he suffered from stress, anxiety, and sleeplessness. Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. p. 14. Consequently, Plaintiff alleges he had to be treated by a physician that included treatment with prescription antidepressants. *Id.;* Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ. J. ¶ 23. In support, Plaintiff's physician will testify at trial. Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ. J. ¶ 24.

Defendants argue that Plaintiff cannot be awarded damages because he was never denied credit after the CRAs had notice of the BSB late payment inaccuracy. Equifax and Experian Joint Mem. in Supp. of Mot. for Summ. J. p. 11. Defendants argue *Casella* supports this in holding that the plaintiff in that case could not recover because he had not been denied credit. *Id.* at 8 (citing *Casella,* 56 F.3d at 475). However, in *Casella,* the Second Circuit Court of Appeals more broadly held that a plaintiff cannot "recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency." *Casella,* 56 F.3d at 475. The Second Circuit did not specifically make a determination whether a plaintiff can recover damages absent a credit denial. *Id.* The Second Circuit did recognize, however, that the Ninth Circuit allowed recovery under the FCRA even absent a credit denial. *See id.* (citing *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995)). Recently, another district court in this Circuit held that a plaintiff can establish damages when there was no credit denial, as long as they can provide that creditors became aware of the inaccurate information. *See Spector v. Trans Union LLC First USA Bank,* 301 F.Supp.2d 231, 237 (D.Conn. 2004).

 In this case, Plaintiff has provided evidence that creditors knew about the alleged erroneous information on his credit report. Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ. J., Ex. B. It is not necessary for this Court to determine whether it

should follow *Spector* and *Guimond* because Plaintiff has not provided sufficient evidence of emotional distress damages. In order to support a claim for emotional distress damages, a plaintiff must demonstrate they suffered an "actual injury." *See Patrolmen's Benevolent Ass'n of New York v. City of New York,* 310 F.3d 43, 55 (2d Cir.2002). To demonstrate an actual injury, a plaintiff generally cannot stand on his subjective testimony alone, but must set forth "other evidence that such an injury occurred." *See id.*

■ As mentioned above, Plaintiff has not established pecuniary damages. Consequently, any of his claims under § 1681 rest solely on his allegations that he has suffered emotional distress damages. In support, other than his own testimony, Plaintiff's only evidence consists of his treating physician's potential testimony. Prior to the commencement of this lawsuit, Plaintiff did not seek any psychiatric care. Pretrial Facts ¶ 9. In fact, Plaintiff did not seek psychiatric care at any time from his first notice of the inaccuracy in his credit report in May 2001, up until the time it was last removed in August 2002. *See* Pl.'s Dep. p. 20. Plaintiff admits the first time he saw a psychiatrist was in the first quarter of 2004. *Id.* Additionally, Plaintiff was approved for two sizable loans from Wells Fargo before seeking psychiatric care. Experian's 56.1 Stmt. ¶ 34.

Plaintiff has not provided any psychiatric or medical records to support that he has suffered emotional damages as a result of the Defendants' actions. In addition to the surrounding circumstances, the testimony of Plaintiff's physician would be the only support for his claim of emotional damages. Plaintiff has not provided any evidence of emotional damages, and, therefore, the claim for emotional damages is dismissed.

Plaintiff has not made out a prima facie case for damages because he has failed to establish pecuniary, emotional, or punitive damages. Thus, all of Plaintiff's remaining FCRA claims are dismissed. *See, e.g., Whelan v. Trans Union Credit Reporting Agency,* 862 F.Supp. 824, 829 (E.D.N.Y. 1994) (holding to establish a claim under § 1681e(b), plaintiff must demonstrate injury). Consequently, this Court will not address the other elements of Plaintiff's FCRA claims.

This Court declines to assert jurisdiction over the state law claims through supplemental jurisdiction. *See* 28 U.S.C. § 1367(c). This Court is not required to retain jurisdiction over the state law claims in light of the federal claims being dismissed. *See Rocco v. New York State Teamsters Conference Pension and Retirement Fund,* 281 F.3d 62, 72 (2d Cir. 2002) (citing § 1367(c)(3)). Pursuant to § 1367(c)(3), this Court in its discretion declines to exercise jurisdiction over any remaining state law claims. *See Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir. 1998)("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, the Court dismisses, without prejudice, Plaintiff's state law claims against Defendants.

*CONCLUSION*

For all the foregoing reasons, this Court GRANTS the Defendants' motions for summary judgment. Furthermore, Experian's pending motion to exclude expert witnesses is DENIED as moot. The Clerk of the Court is directed to mark this case as CLOSED.

SO ORDERED