**Charles KING, Plaintiff,**

v.

**ASSET ACCEPTANCE, LLC, Defendant.**

**No. 1:05–CV–1535–JTC.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 19, 2006.

Lisa Dionne Wright, Law Office of Lisa D. Wright, Atlanta, GA, for Plaintiff.

Michelle Rae Legault, Finley & Buckley, Atlanta, GA, for Defendant.

### ORDER

CAMP, District Judge.

This matter is currently before the Court on Defendant's motion for summary judgment [# 67] and Plaintiff's motion for partial summary judgment [# 85]. Defendant's motion for summary judgment [# 67] is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** with respect to Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim and claim of willful violation of the Fair Credit Reporting Act ("FCRA"). The motion is **DENIED** with respect to Plaintiff's claim of negligent violation of the FCRA and claim for actual damages under the FCRA. Plaintiff's motion for partial summary

judgment [# 85] is **DENIED.** Defendant's motion for leave to file a brief in support of its motion for hearing [# 93] is **GRANTED.** The motion for hearing [# 92] is **DENIED.**

## I. Facts [1]

Sometime in 2001, Plaintiff Charles King discovered that his former girlfriend opened a credit card account with First Consumers National Bank/Newport News ("First Consumers") in King's name by using his social security number without his permission. (DSMF ¶¶ 2–3; King Dep. at 151–54.) [2] King received bills for the account and ignored them, and the account became delinquent. (DSMF ¶ 6; King Dep. at 154.) In September 2002, Defendant Asset purchased the delinquent account from First Consumers. (DSMF ¶ 116; Proctor Aff. ¶ 29.) Defendant Asset informed King of its purchase of the First Consumers account via letter in 2002 and sent collection letters in 2003 and 2004. (DSMF ¶¶ 118, 120; Proctor Aff. ¶¶ 31, 33.) Asset reported its collection account for the past due First Consumers account to at least one credit reporting agency. In November 2004, King obtained his credit report from Equifax, a credit reporting agency, which reported a delinquent First Consumers credit card account and a collection account by Defendant Asset for the First Consumers account. (Complaint ¶¶ 21–23; King Dep. at 78–80.)

In February 2005, King was denied an automobile loan due to delinquent credit obligations reported on his Equifax credit report. (DSMF ¶¶ 41, 45.) On February 11, 2005, King sent a letter to the three credit reporting agencies, Equifax, Experi-

an, and TransUnion, as well as First Consumers and Asset, to dispute the Asset collection account and the underlying First Consumers account. His letter stated:

> I have not opened an account, or authorized anyone to open an account in my name with your company [First Consumers]. Please provide a copy of the authorization that was used to open this account.

> Please advise the three Credit Bureaus and Collection agencies involved, to remove this information from my credit report, this is having a detrimental affect [sic] on my credit.

(# 72, Exh. 1.) Asset responded on February 15, 2005, that it had reported its collection account, based on the First Consumers account, as "disputed" to the credit reporting agencies and provided King an "account statement" containing the name on the account, account number, account balance, and the address, phone number, and social security number connected to the account. (Proctor Aff., Exhs. A, B.)

On March 8, 2005, Equifax generated an Automated Consumer Dispute Verification form ("ACDV") and sent it to First Consumers. (DSMF ¶ 72.) The ACDV contained entries for the consumer's personal information as reflected in Equifax's files and a space for First Consumers, the data furnisher, to respond with the corresponding information from its files. (DSMF ¶¶ 69–70.) The ACDV also had a space for "dispute codes" to categorize the consumer's dispute according to its type and in which a consumer comment regarding the dispute could be conveyed. (DSMF ¶ 72.) The ACDV sent to First Consumers indi-

---

**1.** Except where indicated, the facts in this section are taken from the undisputed evidence in the record.

**2.** Paragraph numbers preceded by "DSMF" refer to paragraphs in Defendant's "State-

ment of Material Facts" [# 67]. Similarly, paragraph numbers preceded by "PSMF" refer to paragraphs in Plaintiff's "Statement of Material Facts" [# 72, # 87.]

cated that the account was not the consumer's and requested that First Consumers provide a complete ID and account information. (DSMF ¶ 72; Equifax Dep. at 15.) First Consumers responded to the ACDV on March 10, 2005, and instructed Equifax to delete the account from King's credit file without additional comment. (DSMF ¶ 73; Equifax Dep. at 15–16.)

When Asset receives an ACDV, it reviews the account information provided by the credit reporting agency on the ACDV, compares it to the information in Asset's files for the account, and notes on the ACDV any "identifiers," such as name, date of birth, address, and social security number, that match. (DSMF ¶ 102.) Asset also notes the dispute codes and customer comments listed in the ACDV and enters that information into its own records for the account. (DSMF ¶ 104.) If the ACDV indicates identity theft or fraud or the consumer alerts Asset directly of a claim of identity theft or fraud, Asset modifies the account to send the consumer a letter requesting an identity theft report which requires the submission of a police report, identity theft/fraud affidavit from the Federal Trade Commission website, or any other information the consumer might have that would help Asset identify that the consumer had been the victim of identity theft/fraud. (DSMF ¶¶ 112–13.) Asset does not typically request account documents from the original creditor in its review of an ACDV.[3] (PSMF ¶ 120.)

On March 28, 2005, Asset verified to Experian the address and social security number contained in the March 8, 2005,
ACDV. (DSMF ¶ 130; PSMF ¶ 94; Proctor Dep. at 197.) Asset noted that the name Experian provided, "Charles M King," was different from the name in its records, "Charles Martin King." (DSMF ¶ 130.) Asset did not request an identity theft report because neither King's letter nor the ACDV mentioned identity theft or fraud. (DSMF ¶ 126.)

On King's March 30, 2005, Equifax credit report, Defendant Asset reported its collection account of the First Consumers account as 120 days past due and noted that the consumer disputed the account information.[4] (DSMF ¶ 74; Equifax Dep. at 21.) On April 8, 2005, King sent letters to Equifax, Experian, and TransUnion, but not to Asset directly, requesting that they reinvestigate the Asset collection account still being reported in his credit file. (Pl.'s Summ. J. Resp., Exh. 1.) Specifically, King requested that the credit reporting agencies "contact Asset Acceptance LLC and request that they contact FCNB/Newport News regarding this fraudulent account and request that they delete this fraudulent collection account on my credit report." (*Id.*)

On April 16, 2005, Equifax sent an ACDV to Asset, which stated in the comments section "Inaccurate information. Need complete ID/Account verification. Not His/Hers. Please provide complete ID." The ACDV also noted that the "consumer disputes this account information" and that the "consumer claims that this account is fraudulent." (Bates Stamped Doc. # 500167). On May 5, 2005, Asset

---

**3.** Asset did not receive the original account documents when it purchased King's account. It only received his address, social security number, note date, charge off date, principal balance, interest added, original creditor, and original account number. (DSMF ¶ 117.)

**4.** On March 11, 2005, TransUnion reported the First Consumers account as deleted from King's credit report. King's March 28, 2005, Experian credit report showed the First Consumers account as deleted. The Experian report showed Asset's collection account as past due and noted that the consumer disputed the account. (Bates Stamped Doc. # 500067).

responded to the April 16, 2005, ACDV and verified that the address and social security number on the ACDV matched Asset's records, but noted that the name on the ACDV ("Charles Martin King") differed from Asset's records ("Charles—King"). (DSMF ¶ 131.) Despite the notation of fraud on the ACDV, Asset did not contact King to request an identity theft report because King's account was in a "cease communication" status.[5] (DSMF ¶¶ 131–32.) As a result of Asset's verification of the information in the April 16, 2005, ACDV, Asset's collection account remained on King's credit reports.

In June 2005, King applied for a Wachovia credit card and was not approved. (DSMF ¶ 46.) MBNA America Bank, the issuer of Wachovia credit cards, denied King's application due to four major delinquencies on his June 1, 2005, credit report, one of which was the Asset collection account. (DSMF ¶¶ 49, 52.)

## II. Summary Judgment Standard

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The movant carries the initial burden and must show the Court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark. Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required "to go beyond the pleadings"

and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating " 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.*

## III. Analysis

Plaintiff King claims that Defendant Asset violated § 1681s–2(b) of the Fair Credit Reporting Act ("FCRA"). Specifically, King asserts that Asset's actions constituted both willful violations under § 1681n and negligent violations under § 1681o. King also contends that Asset violated § 1692e of the Fair Debt Collection Practices Act ("FDCPA"). Asset moves for summary judgment on all claims. King moves for partial summary judgment on his claim of negligent violation of the FCRA.

### A. FCRA Claims

Plaintiff alleges that Defendant violated § 1681s–2(b) of the FCRA. Section 1681s–2(b) states:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

---

**5.** According to Asset's account notes, King contacted Asset on March 30, 2005, and requested that Asset stop calling him. Asset complied with King's request and placed his account in "cease communication" status, which prevented any letters from being sent to him or any phone calls being made to him. (DSMF ¶¶ 127–29).

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(I) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s–2(b)(1). Consumers may pursue claims for both willful and negligent violations of these requirements. *See* 15 U.S.C. §§ 1681n, 1681o.

### 1. Negligent Violation

■ Courts have generally held that § 1681s–2(b)(A) requires furnishers to conduct a *reasonable* investigation upon receiving notice of a dispute. *See. e.g., Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir.2005); *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426, 431 (4th Cir.2004) (" § 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified"); *Cahlin v.*

*Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1160 (11th Cir.1991) ("reasonable investigation" required under 15 U.S.C. § 1681i(a)'s reinvestigation requirement of credit information disputed by a consumer). As stated by the Fourth Circuit,

the plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors. Further, § 1681s–2(b)(1)(A) uses the term "investigation" in the context of articulating a creditor's duties in the consumer dispute process outlined by the FCRA. It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute-and, ultimately, correct-inaccurate information on their credit reports, Congress used the term "investigation" to include superficial, *un* reasonable inquiries by creditors.

*Johnson,* 357 F.3d at 430–31.

■ As the Seventh Circuit has noted, the reasonableness of the investigation is a factual question normally reserved for trial:

The determination of the "reasonableness" of the defendant's procedures, like other questions concerning the application of a legal standard to given facts (notably negligence, a failure to exercise reasonable care), is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question, which it is not in this case.

*Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir.2001); *cf. Westra,* 409 F.3d at 827 ("summary judgment is proper if the reasonableness of the defendant's procedures is beyond question"). In *Westra,* the Seventh Circuit held that the defendant credit furnisher's investigation was reasonable based on the scant information

provided by the credit reporting agency and the lack of any assertion of identity theft or fraud. *See Westra*, 409 F.3d at 827. The Seventh Circuit acknowledged that had "the nature of the dispute concerned fraud, then perhaps a more thorough investigation would have been warranted." *Id.*

In light of the April 16, 2005, ACDV noting that the "consumer claims that this account is fraudulent," a reasonable jury could conclude that Asset's investigation was inadequate. The explicit notice of potential fraud found in the ACDV required a more thorough investigation than would otherwise be required in the absence of such a notification. *See Westra*, 409 F.3d at 827; *Johnson*, 357 F.3d at 431–32 (holding that § 1681s–2(b)(1) requires furnishers to investigate disputes only after receiving adequate notice). Thus, the Court cannot say that the reasonableness of Asset's investigation procedures, namely, the verification of identifying data for the account, is beyond question. *See Crabill*, 259 F.3d at 664.

The evidence shows that Asset's internal procedures for investigation of suspected fraudulent accounts included requesting additional verification from the consumer, such as a police report or Federal Trade Commission affidavit documenting identity theft. Asset did not request additional verification from King in this case because King's account had been placed in a "cease communication" status. The existence of these procedures and Asset's failure to follow them could allow a reasonable jury to conclude that Asset's investigation was inadequate.

However, Asset was not required under the FCRA to contact King, *see Westra*, 409 F.3d at 827, and Asset did not have the original account documents. A jury could determine that Asset's placement of King in a "cease communication" status was a reasonable explanation for its failure to request additional information from King or that Asset's inability to review the original account documents reasonably limited its review to the identifying information.

Therefore, the Court finds that the record contains sufficient evidence to create a factual issue as to whether, in response to the April 16, 2005, ACDV, Asset failed to conduct a reasonable investigation. Accordingly, neither party is entitled to summary judgment on this claim.

### 2. Willful Violation

Section 1681n of Title 15 provides for punitive damages for "[a]ny person who willfully fails to comply with any requirement" imposed under the FCRA. 15 U.S.C. § 1681n(a). "Although malice or evil motive is not necessary," "[o]nly defendants who engaged in 'willful misrepresentations or concealments' have committed a willful violation and are subject to punitive damages under § 1681n." *Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir.1993).

While the Eleventh Circuit has not specifically addressed the meaning of "willful" under the FCRA, the Ninth Circuit has held that "as used in FCRA 'willfully' entails a 'conscious disregard' of the law, which means 'either knowing that policy [or action] to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy [or action] contravened those rights.'" *Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1098 (9th Cir.2006) (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997)), *petition for cert. filed*, 75 U.S.L.W. 3035 (July 19, 2006). Courts have awarded punitive damages for such acts as concealment of some or all of a credit report from a consumer, *see Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th

Cir.1976), but denied punitive damages for failure to investigate adequately and correct inaccurate information in the consumer's credit report, *see Stevenson,* 987 F.2d at 294 (holding that although defendant "moved slowly in completing its investigation and was negligent in its compliance with the prompt deletion requirement," noncompliance was not willful); *see also Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986).

■ In this case, "[t]he record does not reveal ... any intention to thwart consciously [King's] right to have inaccurate information removed promptly from his report." *Stevenson,* 987 F.2d at 294. While Asset may have been negligent in its investigation of King's claim of fraud, King has not produced any evidence suggesting that Asset acted with a "conscious disregard" of King's rights under the FCRA. Asset responded to King's February 11, 2005, inquiry, the sole inquiry sent directly to Asset, by disclosing the account information to King and reporting its collection account as "disputed." Asset also responded to the April 16, 2005, ACDV by comparing the information provided with its internal records. The fact that Asset concluded that the account was King's and continued to report the account to the credit reporting agencies does not evidence a willful violation of King's FCRA rights: Asset did not refuse to investigate, withhold information, or report knowingly inaccurate information. *Cf. Millstone,* 528 F.2d at 834. Accordingly, Asset is entitled to summary judgment on this claim.

### 3. Damages

■ Defendant argues that it is entitled to summary judgment on Plaintiff's FCRA claims because Plaintiff has not suffered any damages. A successful plaintiff in an action brought pursuant to the FCRA may recover his actual damages sustained as a result of the credit furnisher's negligent failure to comply with the law, along with the costs of the action and reasonable attorneys fees. *See* 15 U.S.C. § 1681*o.* Damages are an element of the claim, and without evidence of damages, summary judgment is appropriate. Seeking to meet his burden of proving actual damages sustained as a result of Defendant's conduct, Plaintiff offers three types of damages: (1) emotional damages for embarrassment, irritability, and frustration; (2) costs incurred in an effort to resolve the matter without litigation; and (3) damages based on the denial of credit. While Defendant contests each category, only the first category need be addressed.

The Eleventh Circuit has recognized, without deciding, that a plaintiff seeking actual or compensatory damages under the FCRA might be entitled to recover compensation for emotional distress. *See Levine v. World Fin. Network Nat'l Bank,* 437 F.3d 1118, 1124 (11th Cir.2006). Other courts, cited by the Eleventh Circuit in *Levine,* have specifically so held. *See Bakker v. McKinnon,* 152 F.3d 1007, 1013 (8th Cir.1998) (holding that, even in the absence of "out-of-pocket expenses or costs incurred," the district court did not abuse its discretion in awarding actual and punitive damages when appellees testified "about how they felt when appellant obtained their credit reports and violated their privacy, thereby causing them some emotional distress"); *Philbin v. Trans Union Corp.,* 101 F.3d 957, 963 n. 3 (3d Cir.1996) ("Given the amorphous nature of the damages at issue, we do not consider it necessary that [the plaintiff] state his damages with any greater degree of particularity"); *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 474 (2d Cir.1995) ("[T]he District Court properly recognized that 'actual damages' may include humiliation and mental distress, even in the ab-

sence of out-of-pocket expenses"); *see also Moore v. Equifax Info. Servs. LLC*, 333 F.Supp.2d 1360, 1365 & n. 3 (N.D.Ga.2004) (Shoob, J.) (noting that damages for mental distress are recoverable under the FCRA even if the consumer has suffered no out-of-pocket losses).

 Here, Plaintiff claims to have suffered emotional distress damages, including embarrassment, frustration, and irritability as a result of Defendant's violations of the FCRA. Plaintiff has provided his own testimony in support of his allegations. Based on this evidence, the Court cannot say, as a matter of law, that Plaintiff is not entitled to recover damages for emotional distress. In FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond his own testimony. *See Moore*, 333 F.Supp.2d at 1365 & n. 3. Accordingly, Defendant is not entitled to summary judgment on this claim.

### B. FDCPA Claim

Plaintiff claims that Defendant violated § 1692e(2)(A), (8), and (10) of the FDCPA by continuing to report the collection account (1) after receiving Plaintiff's February 11, 2005, correspondence; (2) after First Consumers deleted its account from Plaintiff's credit report; and (3) after receiving the April 16, 2005, ACDV. Plaintiff asserts that Defendant's continued reporting of its collection account constituted a violation of § 1692e because Defendant knew or should have known that the account information was false or misleading. Defendant responds that it reported the account as "disputed" upon receiving Plaintiff's February 2005 notice, in compliance with the FDCPA, and that it continued to report the account because it confirmed the identifying account information as belonging to Plaintiff.

Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Subsections 1692e(2)(A), (8) and (10) set forth specific examples of violations of that general principle. Section 1692e(2)(A) provides that the "false representation of the character, amount, or legal status of any debt" constitutes a violation of the FDCPA; § 1692e(8) provides that "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false" violates the FDCPA; and § 1692e(10) states that "use of any false representation or deceptive means to collect or attempt to collect any debt" violates the FDCPA.

In *Farren v. RJM Acquisition Funding, LLC*, No. Civ. A. 04–995, 2005 WL 1799413, at *9, *12 (E.D.Pa. July 26, 2005), the district court rejected the plaintiff's claim that the defendant, a collector similar to Asset, made a false representation as to the character or legal status of the debt or in an attempt to collect the debt in violation of the FDCPA even though it was later discovered that the debt did not belong to the plaintiff. The court found compelling the fact that there was no evidence to show that the defendant was aware that the debt was not the plaintiff's when it reported the debt, stating:

> If the Court were to interpret the FDCPA as [the plaintiff] requests, any debt collector or data furnisher who communicates in anyway about a debt that is later discovered not to be owed by the individual the debt collector originally thought owed it would be liable under the FDCPA. The Court will not interpret this statute so broadly as to create such a liability. The FDCPA was intended to protect debtors from offensive, misleading, and aggressive tactics by debt collectors, not to hold debt col-

lectors or others in the industry that refrain from such tactics to a standard of omniscience as to whether or not a debt will eventually be found to belong rightfully to someone other than the individual first identified as the debtor. *Id.* at *9.

The Court finds the rationale in *Farren* applicable here and declines to interpret the FDCPA as requiring debt collectors to refrain from reporting account information solely because a debtor informs the collector that he believes the account to be fraudulent. Such a policy would encourage debtors to claim that their debts were fraudulent so that the debts would be removed from their credit files. The Court also declines to compel debt collectors to disregard the results of their own investigations. Simply stated, "the Court will not hold [a defendant debt collector] to a standard where a communication [such as the report of a debt to a credit reporting agency] *reasonably believed* by the sender to be accurate is later found to be inaccurate is deemed 'deceptive.'" *Id.* at *12 (emphasis added).

Here, the evidence shows that Asset reported its collection account to the credit reporting agencies as "disputed" on February 15, 2005, four days after King sent his February 11, 2005, letter. This demonstrates compliance with § 1692e(8) and puts King's potential creditors on notice that the account is disputed. Although King asserted in his February 2005 letter that the account was not his, and in April 2005 informed the credit reporting agencies that the account was fraudulent, King has not provided any evidence to suggest that Asset knew or should have known that the account information was false. Following each of King's two letters, Asset received an ACDV and each time confirmed the account as belonging to King based on the identifying information

in its records. The Court will not deem Asset's report of the account to the credit reporting agencies as "false" or "deceptive" as there is no evidence to show that Asset did not reasonably believe that the debt did not belong to King. *See id.*

Therefore, the Court finds that King has not provided evidence to support his FDCPA claim, and Asset is entitled to summary judgment on this claim.

## IV. Conclusion

Defendant's motion for summary judgment [# 67] is **GRANTED in part** and **DENIED in part.** The motion is **GRANTED** with respect to Plaintiff's FDCPA claim and claim of willful violation of the FCRA. The motion is **DENIED** with respect to Plaintiff's claim of negligent violation of the FCRA and claim for actual damages under the FCRA. Plaintiff's motion for partial summary judgment [# 85] is **DENIED.** Defendant's motion for leave to file a brief in support of its motion for hearing [# 93] is **GRANTED.** The motion for hearing [# 92] is **DENIED.**