CHARLES A. PANNELL, JR., United States District Judge
This action was brought by the plaintiff under Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA"). Before the court is the defendant Ocwen Loan Servicing, LLC's ("Ocwen") objections [Doc. No. 29] to the February 25, 2019, report and recommendation ("R & R") of the magistrate judge [Doc. No. 27], which recommends that Ocwen's motion to dismiss [Doc. No. 13] be granted in part and denied in part. Having reviewed the record, the court enters the following order.
I. Background and Factual Allegations[1]
The plaintiff alleges that the defendants Ocwen, Equifax Information Services, LLC ("Equifax"), and TransUnion, LLC ("TransUnion") put incorrect information on his consumer credit report. Equifax and *1328 TransUnion are both credit reporting agencies ("CRAs") under the FCRA, while Ocwen is a "furnisher"-meaning Ocwen furnishes consumer information to CRAs like Equifax and TransUnion. Among other things, the plaintiff alleges that the defendants wrongly displayed a mortgage delinquency on his report based on his mortgage with Deutsche Bank National Trust Company ("Deutsche Bank").
In October 2006, Deutsche Bank sued the plaintiff to foreclose on the mortgage, alleging the plaintiff stopped making payments in May 2008. The plaintiff contends that the mortgage should have aged off his credit reports in June 2015, seven years after the date of the first delinquency on the loan. However, beginning in November 2017, Equifax and TransUnion inaccurately reported the mortgage account on the plaintiff's consumer credit reports.
The plaintiff sent letters to Equifax and TransUnion disputing the reports in November 2017 and January 2018. Both entities forwarded the relevant information to Ocwen. The plaintiff alleges that Ocwen then failed to conduct a reasonable investigation by, for instance, not checking its records showing the plaintiff's last payment date was in April 2008, and that Ocwen then falsely reported to Equifax and TransUnion that their report on the plaintiff's mortgage account was accurate. In other words, the plaintiff alleges that, after being notified of the disputes, Ocwen failed to conduct a reasonable investigation and failed to correct the inaccurate information. This caused the plaintiff's credit score to drop, and he was unable to obtain preapproval or otherwise prequalify for a mortgage loan with Caliber Home Loans ("Caliber") and with Fairway Independent Mortgage Corporation ("Fairway") in 2018.
The plaintiff then filed this action, and Ocwen has moved to dismiss the claims against it. The magistrate judge issued an R & R recommending that the court grant in part and deny in part Ocwen's motion to dismiss. The R & R recommends granting Ocwen's motion as to the plaintiff's "permissible purpose" claim under 15 U.S.C. § 1681b. The R & R also recommends denying Ocwen's motion to dismiss "to the extent it relies on the argument that the alleged credit denials were not based on consumer reports." R & R at 17 [Doc. No. 27]. No party has specifically objected to these findings.[2]
The R & R further recommends denying Ocwen's motion to dismiss as to the plaintiff's § 1681s-2(b) claim against Ocwen. Ocwen has filed objections to this latter finding, asserting that (1) only CRAs can be liable for reporting information about accounts that have been delinquent for more than seven years; (2) the seven-year aging off rule does not apply because of an exception; and (3) the date of the first delinquency did not trigger the seven-year aging period because the loan was not yet placed in collection or charged off.
II. Legal Standard
To challenge the findings and recommendations of the magistrate judge, a party must file with the clerk of court written objections which "shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis of the objection." Heath v. Jones , 863 F.2d 815, 822 (11th Cir. 1989). If timely and proper objections are filed, the district court *1329 "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).
The magistrate judge recommended that Ocwen's motion to dismiss be granted in part and denied in part [Doc. No. 27]. The court, therefore, will review de novo those findings and recommendations of the report and recommendation to which objection has been made. See Heath, supra ; see also Canty v. Fry's Elecs., Inc. , 736 F.Supp.2d 1352, 1381 n.2 (N.D. Ga. 2010). This court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).
Since the underlying motion in this case is a motion to dismiss under Rule 12(b)(6), the court will also set forth the applicable legal analysis for resolving that motion. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). This requires more than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. The plaintiff must allege facts that "raise the right to relief above the speculative level." Id. When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. Resnick , 693 F.3d at 1321-22.
III. Analysis
As noted above, the magistrate judge recommends denying Ocwen's motion to dismiss as to the plaintiff's claim against Ocwen under 15 U.S.C. § 1681s-2(b). In objecting to this finding, Ocwen asserts several arguments which the court will consider in turn.
First, Ocwen argues that only CRAs have a duty to remove accounts from consumer reports that have "aged-out" under 15 U.S.C. § 1681c(a). Ocwen argues that, as a furnisher, Ocwen does not fall under the obligations § 1681c(a) sets forth for CRAs, and that the plaintiff does not otherwise state a claim against it. Under § 1681c(a), CRAs are prohibited from reporting information about "[a]ccounts placed for collection" or "[a]ny other adverse item of information" that predate the consumer report by seven years or more. However, the magistrate judge concluded that § 1681c(a)'s obligation on CRAs does not prevent liability for Ocwen under § 1681s-2(b), which charges furnishers with investigating the accuracy of disputed information in consumer reports and correcting any discovered inaccuracies. See 15 U.S.C. § 1681s-2(b)(1).
The court agrees with the magistrate judge's analysis. The duty to investigate and correct disputed information also includes determining whether a mortgage delinquency should have aged off a consumer report. Indeed, other courts have found that furnishers can be liable based on similar allegations and have rejected Ocwen's argument. Cunningham v. Ocwen Fin. , No. 3:12-CV-0440, 2014 WL 688229, at *2 (M.D. Tenn. Feb. 20, 2014) ("[The plaintiff's] allegation that Ocwen ... knowingly reinserted inaccurate information regarding a loan account to show that it was *1330 delinquent falls within the plain language of Section 1681s-2(b)(1)(E)."). As to the plaintiff's allegations themselves, the plaintiff has specifically alleged that he "is making a claim against Ocwen under § 1681s-2(b)." Compl. at ¶ 12 n.1 [Doc. No. 1]. He has also sufficiently alleged the elements for that claim.
To state a claim against Ocwen under § 1681s-2(b), the plaintiff must allege that "(1) the furnisher received notice of the consumer's dispute from a consumer reporting agency and (2) the furnisher failed to conduct a reasonable investigation, failed to report the results of the investigation to the credit reporting agency, or failed to correct inaccurate or incomplete information." Campbell v. AmeriCredit , No. 1:09-CV-3115-RLV-LTW, 2010 WL 11647339, at *8 (N.D. Ga. Aug. 9, 2010) ; Labreck v. Bank of Am., N.A. , No. CV 17-015-RGA, 2018 WL 6427717, at *3 (D. Del. Dec. 7, 2018). The plaintiff has sufficiently done so. He has alleged that Ocwen received notice of the dispute letters sent to Equifax and TransUnion, and that Ocwen failed to conduct a reasonable investigation or otherwise failed to correct inaccurate information. The plaintiff alleges that Ocwen failed to review its own records regarding the date of the first delinquency on the mortgage and failed to correct that inaccurate information such that the CRAs did not remove the aged-off loan from the consumer report. Therefore, the plaintiff has plausibly stated a claim against Ocwen under § 1681s-2(b).
Next, Ocwen argues that it was nonetheless appropriate to include the account in the plaintiff's consumer reports because of an exception to the seven-year aging off rule. Under 15 U.S.C. § 1681c(b)(1), accounts that have been delinquent for more than seven years can be reported in connection with a credit transaction involving a principal amount of more than $ 150,000. Ocwen asserts that the mortgage loan was therefore appropriately included on a consumer report used for the plaintiff's 2018 loan applications. But the magistrate judge correctly concluded that there is no allegation or evidence that those loans were for $ 150,000 or more, and that the application of an exception does not remove a furnisher's duty to investigate disputed information:
Even if Plaintiff's consumer report was intended to be used in connection with a credit transaction involving more than $ 150,000, which assumes facts not currently in the record, that would not absolve Ocwen from liability for failing to investigate a disputed inaccuracy.
R & R at 31-32 [Doc. No. 27]. In other words, at this stage of the litigation, there is no basis to conclude that the exception applied, and Ocwen's duty to investigate the dispute would remain regardless.
Finally, Ocwen argues that the loan has not aged off from reporting because it was not "placed for collection" or charged off more than seven years before the reports by Equifax and TransUnion. But again, that does not remove a furnisher's duty of conducting a reasonable investigation and correcting inaccurate information. In addition, delinquent loans that are not charged off or placed for collection are still subject to the aging off rule. The statute provides that "[n]o consumer reporting agency may make any consumer report containing ... [a]ny other adverse information ... which antedates the report by more than seven years." 15 U.S.C. § 1681c(b)(1). This includes a delinquent loan. Here, the plaintiff alleges that the first delinquency occurred in May 2008, more than seven years before the allegedly inaccurate reports began in November 2017. Thus, the plaintiff has alleged that his mortgage should have aged off the consumer reports.
*1331 Accordingly, Ocwen's objections are due to be OVERULED.[3]
IV. Conclusion
Ocwen's objections [Doc. No. 29] are OVERRULED . As to those portions of the R & R to which no specific objections have been filed, the court finds no error. Therefore, after carefully considering the R & R [Doc. No. 27] of the magistrate judge, the objections thereto, and having reviewed the matter de novo, the court receives the R & R with approval and ADOPTS it as the opinion and order of this court.
SO ORDERED this 19th day of March, 2019.
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
LINDA T. WALKER, CHIEF UNITED STATES MAGISTRATE JUDGE
This case is presently before the Court on a Motion to Dismiss filed by Defendant Ocwen Loan Servicing, LLC ("Ocwen") (Doc. 13), and a Motion for Leave to File Surreply filed by Plaintiff Benji Hill ("Plaintiff") (Doc. 24). For the reasons explained below, this Court RECOMMENDS that Ocwen's Motion to Dismiss be GRANTED IN PART and DENIED IN PART (Doc. 13) and DENIES Plaintiff's Motion for Leave to File Surreply (Doc. 24).
BACKGROUND [1]
I. GENERAL BACKGROUND
Plaintiff alleges that Defendants Ocwen, Equifax Information Services, Inc. ("Equifax"), and TransUnion, Inc. ("TransUnion") (collectively, "Defendants") intentionally and negligently violated the Fair Credit Reporting Act ("FCRA") (Compl. ¶¶ 191-214). The dispute arises from Defendants' reporting of a mortgage loan (the "mortgage") secured by a property Plaintiff owned in Florida. (Compl. ¶¶ 13, 14). Ocwen was the servicer of the mortgage. (Compl. ¶ 15). Plaintiff stopped paying the mortgage in April 2008. (Compl. ¶ 17). Plaintiff contends that the mortgage should have aged off his credit reports in June 2015, seven years after the date of first delinquency. (Compl. ¶ 30).
On October 7, 2008, Deutsche Bank National Trust Company as Trustee for the Registered Holders of New Century Holders of New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Passed-Through Certificates ("Deutsche Bank") sued Plaintiff to foreclose the mortgage. (Compl. ¶ 20; Ex. A). The Complaint alleged that Plaintiff stopped making payments in May of 2008. (Compl. ¶ 22). On December 11, 2014, Plaintiff entered into a Settlement Stipulation and Consent to Final Judgment of Mortgage Foreclosure ("Settlement Stipulation") with Deutsche Bank. (Compl. ¶ 28; Ex. B). In the Settlement Stipulation, Plaintiff consented to an in rem judgment of foreclosure and waived the right to object to a foreclosure sale. (Compl. ¶ 29). In exchange, Deutsche Bank agreed "to accept the property and/or any amounts received from the foreclosure sale as full consideration of the debt" and agreed not to seek a deficiency judgment against Plaintiff. (Id. ).
*1332 On April 18, 2018, Ocwen filed a second lawsuit against Plaintiff to foreclose the mortgage. (Compl. ¶ 178; Ex. C). Ocwen alleged that Plaintiff's mortgage went into default on May 1, 2013. (Compl. ¶ 179). After filing the second lawsuit, Ocwen reported to Equifax and TransUnion that Plaintiff's delinquency began in October 2012. (Compl. ¶ 182).
II. EQUIFAX'S CONSUMER REPORTS
On August 28, 2014, Equifax's credit report showed Plaintiff's mortgage and reported June 2008 as the date of last activity. (Compl. ¶¶ 23, 25). The mortgage did not appear on credits reports Plaintiff obtained from Equifax on January 4, 2016; September 9, 2017; October 9, 2017; and October 31, 2017. (Compl. ¶¶ 33-35, 38-39, 42). The first alleged inaccuracy occurred on an Equifax report Plaintiff obtained on November 7, 2017. (Compl. ¶¶ 43, 45-65). At that time, Equifax reported the following:
Account Name: Ocwen Loan Servicing
Account #: 380184XX
Account Type: Savings & Loan Assns.
Balance: $ 141,868.00
Past Due: $ 0
Date Opened: 6/8/2005
Account Status: Open
Mo. Payment: $ 1,164.00
Payment Status: Pays account as agreed
High Balance: $ 153,000
Limit: $ 0.00
Terms: M 30Y
Comments: Affected By Natural Disaster
(Compl. ¶ 45). In addition, Equifax reported Plaintiff's 24-month payment history, which reported the mortgage account as "OK" in September 2015, October 2015, February 2016, March 2016, April 2016, June 2016, July 2016, September 2016, and October 2016. (Compl. ¶¶ 46-47). Because Plaintiff had not made a payment on the account since April 2008, the report was inaccurate. (Compl. ¶¶ 47-52). Equifax also reported that Plaintiff was 120 days late on the mortgage in November 2015, December 2015, January 2016, May 2016, August 2016, December 2016, and January 2017-August 2017. (Compl. ¶ 55). Plaintiff alleges this was also inaccurate because he did not owe any payments after the 2014 Settlement Stipulation. (Compl. ¶ 56). Plaintiff further observes it is impossible, and therefore inaccurate, for the mortgage account to be "Ok" in February, March, and April 2016, and then 120 days late in May 2016. (Compl. ¶ 57). Similarly, the mortgage account could not be "Ok" in June and July 2017, and 120 days late in August 2016, or "Ok' in October and November 2016, and 120 days late in December 2016. (Compl. ¶¶ 58-59). Plaintiff alleges that Equifax did not investigate the inaccuracies before reporting the mortgage account, despite internal inconsistencies, contradictions in previous reports, and notice of the foreclosure in the credit file. (Compl. ¶¶ 60-65). Plaintiff states that Equifax continued to inaccurately report the mortgage account on a credit report he obtained on November 19, 2017. (Compl. ¶¶ 66, 68).
A. First Dispute
On November 20, 2017, Plaintiff sent a dispute letter to Equifax. (Compl. ¶ 84). In the letter, Plaintiff informed Equifax that the account should be removed because no payment had been made on the account since April 2008. (Compl. ¶ 85). Plaintiff alleges Equifax received his dispute, forwarded the relevant information to Ocwen, and Ocwen failed to conduct a reasonable investigation of his dispute. (Compl. ¶¶ 86-89). According to Plaintiff, Ocwen did not check its records for his last payment date, *1333 review the foreclosure information, for take any other steps to address the dispute. (Compl. ¶¶ 90-93). Instead, Ocwen reported to Equifax that the account was accurate. (Compl. ¶ 94).
Equifax sent Plaintiff the results of the reinvestigation in December 2017, stating that Equifax verified that "this item belongs to you" based on "additional information ... from the original source." (Compl. ¶¶ 95-96). Equifax did not send Plaintiff any documents related to his contentions that the account had been delinquent for over nine years and should be removed. (Compl. ¶¶ 97-99). With the reinvestigation results, Equifax also sent Plaintiff an updated consumer report, which showed September 2017 as the "date of last activity." (Compl. ¶¶ 100-101). Plaintiff contends this is inaccurate, and Equifax did not properly reconcile this new report with its previous reporting. (Compl. ¶¶ 101-104).
B. Second Dispute
Plaintiff sent a second dispute to Equifax on January 8, 2018,[2] which again informed Equifax that the account should be removed because he had not made any payments since April 2008. (Compl. ¶¶ 126-127). Plaintiff also informed Equifax that the account may have reappeared because Brevard County was declared a National Disaster Area, which suspended all negative credit reporting for loans in that county and could have caused the account to be reported "Current." (Compl. ¶ 127). Plaintiff alleges Equifax received his Plaintiff's dispute, forwarded the relevant information to Ocwen, and Ocwen failed to conduct a reasonable investigation of his dispute. (Compl. ¶¶ 128-131). According to Plaintiff, Ocwen did not check its records for his last payment date, review the foreclosure information, or take any other steps to address the dispute. (Compl. ¶¶ 132-136). Instead, Ocwen reported to Equifax that the account was accurate. (Compl. ¶ 137). Plaintiff also received a letter from Ocwen on January 23, 2018, which stated that the letter was "in response to your recent allegation of identity theft ... this concern was received by Equifax and forwarded to Ocwen on January 16, 2017." (Compl. ¶ 138).
Equifax responded to Plaintiff's second dispute by stating that it verified the mortgage account belonged to him based on additional information from the original source. (Compl. ¶¶ 142-144). Equifax's response did not address the reasons for Plaintiff's dispute. (Compl. ¶¶ 144-145). Plaintiff also alleges Equifax did not review or investigate any of the records related to the re-aging of his mortgage account. (Compl. ¶¶ 146-150). Equifax subsequently sent Plaintiff an updated consumer report, which showed February 2017 as the "date of last activity." (Compl. ¶ 152). Plaintiff contends this inaccuracy demonstrates that Equifax took no steps to reconcile its reporting with previous reports showing May 2008 as the "date of last activity." (Compl. ¶¶ 152-153).
C. Negative Effect on Credit Score
In April 2018, Equifax changed the "Payment Status" of the Mortgage from "Paid or Paying as Agreed" to "Late" and changed the past due amount from $ 0 to $ 69,227. (Compl. ¶ 176). As a result, Plaintiff's credit score dropped from 747 to 685. (Id. ).
III. TRANSUNION'S CONSUMER REPORTS
The credit reports Plaintiff obtained from TransUnion on September 9, 2017, *1334 October 9, 2017, October 31, 2017, and November 7, 2017, did not include any information about the mortgage. (Compl. ¶¶ 34, 36, 38, 40, 42-44). The first alleged inaccuracy occurred on a report Plaintiff obtained from TransUnion on November 19, 2017. (Compl. ¶¶ 66-69). At that time, TransUnion reported the following:
Account Name: Ocwen Loan Servicing
Account #: 380184XX
Account Type: Banks and S & Ls
Balance: $ 141,868.00
Past Due: 0
Date Opened: 6/8/2005
Account Status: Open
Mo. Payment: $ 1,164.00
Payment Status: Paid or Paying as Agreed
High Balance: $ 153,000
Limit: $ 0.00
Terms: 360 Months
(Compl. ¶ 69). In addition, TransUnion reported a 24-month payment history, which reported the mortgage account as "ND," or no data, in February 2016, March 2016, April 2016, June 2016, July 2016, September 2016, October 2016, and November 2016. (Compl. ¶ 73). Because Plaintiff had not made a payment on the account since April 2008, the report was inaccurate. (Compl. ¶¶ 71-72). In addition, TransUnion reported that Plaintiff was 120 days late on the mortgage in November 2015, December 2015, January 2016, May 2016, August 2016, December 2016, and January through August 2017. (Compl. ¶ 74). Plaintiff alleges this was inaccurate because he did not owe any payments after the 2014 Settlement Stipulation. (Compl. ¶ 75). Plaintiff also contends that it is impossible, and therefore inaccurate, for the mortgage account to be reported as "ND" in February, March, and April 2016, and then 120 days late in May 2016. (Compl. ¶ 76). Similarly, Plaintiff could not be "ND" in June and July 2016, and 120 days late in August 2016, or "ND' in September, October, and November 2016, and 120 days late in December 2016. (Compl. ¶ 76). Plaintiff alleges TransUnion did not investigate the inaccuracies before reporting the mortgage account, despite internal inconsistencies, contradictory information in prior reports, and notice of the foreclosure in the credit file. (Compl. ¶¶ 77-83).
A. First Dispute
On November 21, 2017, Plaintiff sent a dispute letter to TransUnion. (Compl. ¶ 105). In the letter, Plaintiff informed TransUnion that the mortgage account should not be reported because no payment had been made on the account since April 2008. (Compl. ¶ 106). Plaintiff alleges TransUnion received his dispute, forwarded the relevant information to Ocwen, and Ocwen failed to conduct a reasonable investigation of his dispute. (Compl. ¶¶ 107-110). According to Plaintiff, Ocwen did not check its records for his last payment date, review the foreclosure information, or take any other steps to address the substance of his dispute. (Compl. ¶¶ 111-114). Instead, Ocwen reported to TransUnion that the account was accurate. (Compl. ¶ 115).
TransUnion sent Plaintiff the results of the reinvestigation in December 2017, which updated the payment history to show that his mortgage account was current for September 2017, October 2017, and November 2017. (Compl. ¶¶ 116-118). Plaintiff also alleges TransUnion did not review any documents or evidence related to his contention that the mortgage account had been delinquent for over nine years and should be removed. (Compl. ¶¶ 120-122). Plaintiff contends this is inaccurate, and TransUnion did not conduct a reasonable reinvestigation. (Compl. ¶¶ 122-123).
*1335 B. Second Dispute
On January 5, 2018, Plaintiff sent another dispute to TransUnion by certified mail. (Compl. ¶ 155). Plaintiff again explained that the account should be removed because of its age. (Compl. ¶ 156). Plaintiff also informed TransUnion that the account may have reappeared because Brevard County was declared a National Disaster Area, which suspended all negative credit reporting for loans in that county and could have caused the account to be reported "Current." (Id. ). Plaintiff alleges that TransUnion received his dispute, forwarded the relevant information to Ocwen, and Ocwen failed to conduct a reasonable investigation of Plaintiff's dispute. (Compl. ¶¶ 158-160). According to Plaintiff, Ocwen did not check its records for his last payment date, review the foreclosure information, or take any other steps to address the dispute. (Compl. ¶¶ 161-165). Instead, Ocwen reported to Equifax that the account was accurate. (Compl. ¶ 166).
On January 30, 2018, TransUnion sent Plaintiff the results of its reinvestigation, stating that the mortgage account was "verified as accurate." (Compl. ¶¶ 167, 169). Plaintiff alleges that TransUnion did not conduct a reasonable investigation and failed to review any documents or evidence related to his dispute. (Compl. ¶¶170-175).
C. Negative Effect on Credit Score
In April 2018, TransUnion changed the "Payment Status" from "Paid or Paying as Agreed" to "Late," and increased the past due amount from $ 0 to $ 65,000. (Compl. ¶ 177). Plaintiff states this change caused his credit score to drop from 731 to 669. (Id. ).
IV. CONSUMER REPORT ORDERED BY OCWEN
Ocwen ordered a consumer report about Plaintiff from Experian on December 1, 2017. (Compl. ¶ 124). According to Plaintiff, Ocwen did not have any permissible purpose to obtain Plaintiff's consumer report. (Compl. ¶ 125).
V. DAMAGES
Plaintiff contends that as a result of Defendants' FCRA violations, he has suffered "actual damages, including credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities." (Compl. ¶ 183). Plaintiff states that he tried to purchase a home in 2018, but was unable to obtain a preapproval for a mortgage from Caliber Home Loans ("Caliber") or prequalify for a mortgage with Fairway Independent Mortgage Corporation ("Fairway") because of the Ocwen tradeline on his consumer reports. (Compl. ¶¶ 184-189). Plaintiff also alleges Defendants' misconduct caused him to suffer severe anxiety and panic attacks, and he began seeing a therapist and psychiatrist in March 2018. (Compl. ¶ 190).
OCWEN'S MOTION TO DISMISS
Ocwen's Motion to Dismiss contends that Plaintiff fails to state a plausible claim against Ocwen. (Doc. 13-1, at 1). Specifically, Ocwen's first argument is that Plaintiff, as a real estate investor, is not entitled to FCRA protections. (Id. at 2). Second, Plaintiff's "permissible purpose" claim arising under Section 1681b fails because of Ocwen's role as Plaintiff's mortgage servicer. (Id. at 13-17). Ocwen also contends that the remainder of Plaintiff's dispute falls under Section 1681c, which only applies to consumer reporting agencies ("CRAs") and does not require Ocwen to have removed the mortgage tradeline due to its age. (Id. at 17-19). Further, Ocwen argues its tradeline can be included in a *1336 consumer report under 15 USC § 1681c(a)(4) because the mortgage involved a principal amount of more than $ 150,000. (Id. at 19-20).
Plaintiff responds that he has adequately pled a claim under Section 1681s-2(b) against Ocwen, which Ocwen does not address in its Motion to Dismiss. (Doc. 20, at 2-8). Plaintiff believes his "permissible purpose" claim should move forward because he did not have an account with Ocwen at the time it pulled his consumer report due to the Settlement Stipulation. (Id. at 9-16). Additionally, Plaintiff contends that such a fact-intensive inquiry is not appropriate at the motion to dismiss stage. (Id. at 11). Plaintiff argues he can invoke the protections of the FCRA, and whether he is a real estate investor has no effect on his FCRA claims under Sections 1681s-2(b) and 1681b. (Id. at 16-23). Plaintiff also points out that Ocwen's argument assumes facts not in the Complaint. (Id. at 18, 21-23). Finally, Plaintiff disagrees with Ocwen's position that the mortgage account can be included on his credit report; but even if it could, Ocwen must still reinvestigate and delete inaccurate information under Section 1681s-2(b) and have a permissible purpose for obtaining Plaintiff's credit report. (Id. at 23-25).
Ocwen replies that Plaintiff is incorrect about the effect of the Settlement Stipulation, and the mortgage continues to be outstanding until the foreclosure sale is completed. (Doc. 23, at 2). Ocwen contends that without a factual inaccuracy, Plaintiff's Section 1681s-2(b) claim is due to be dismissed. (Id. at 3-10). Ocwen also argues that it is permissible for a creditor to access a credit report to confirm that an existing account is being reported correctly. (Id. at 10-14). Finally, Ocwen contends that Plaintiff did not plead a non-commercial purpose for seeking credit that would be covered by the FCRA. (Id. at 14-15).
I. LEGAL ANALYSIS
A. Motion to Dismiss Standard
Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations in Plaintiff's Amended Complaint, there is a dispositive legal issue which precludes relief or if the claim is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ; Brown v. Crawford Cnty., 960 F.2d 1002, 1009-10 (11th Cir. 1992). A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To state a claim with sufficient specificity requires that the complaint have enough factual matter, which when taken as true, suggests the required elements of the claim. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007) ; Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ).
B. Credit Denials by Caliber and Fairway
The first issue raised by Ocwen is that the FCRA does not apply to credit reports obtained for business or commercial purposes.
*1337 (Doc. 13-1, at 10-12). Ocwen alleges that Plaintiff is a real estate investor, and that he owned or owns multiple properties in Florida. (Id. at 12-13). While Plaintiff states that he was denied preapproval and prequalification for a mortgage, Plaintiff does not specify whether the mortgage he sought was to purchase a home for personal use or investment. (Id. at 13). Plaintiff argues that in Yang v. Gov't Employees Ins. Co., 146 F.3d 1320 (11th Cir. 1998), the Eleventh Circuit defined "consumer report" to encompass any consumer report collected "for the purpose of evaluating a consumer's creditworthiness. Id. at 1323 ; (Doc. 13-1, at 19-20). Plaintiff contends that because of the holding in Yang, Ocwen's speculation about the commercial use of the reports is irrelevant because Caliber and Fairway viewed Plaintiff's individual credit report for the purpose of evaluating his creditworthiness. (Doc. 13-1, at 21). Plaintiff argues that it is improper for Ocwen to assume that the mortgage lenders viewed Plaintiff's consumer report for a purpose not regulated by the FCRA. (Id. at 22-23). In its Reply, Ocwen reiterates that Plaintiff failed to allege that the credit reports were obtained for a non-commercial purpose. (Doc. 23, at 14-15).
An individual who conducts business in his or her own name is not completely excluded from the protections of the FCRA. Even if the Court found that the credit reports pulled by Caliber and Fairway were not "consumer reports" as defined by the FCRA, such a finding would not warrant the dismissal of Plaintiff's claims; it would only affect the calculation of Plaintiff's actual damages by eliminating the credit denial. Actual damages are not required to state a claim for a willful violation of the FCRA. Levine v. World Fin., Network Nat. Bank, 437 F.3d 1118, 1124 (11th Cir. 2006) (holding that actual damages are not required to make out a prima facie case of willful noncompliance with the FCRA). Here, while actual damages are an element of an FCRA claim based on negligent noncompliance, the two credit denials are not the only actual damages Plaintiff alleges. King v. Asset Acceptance, LLC, 452 F.Supp.2d 1272, 1280 (N.D. Ga. 2006) (observing that actual damages are an element of a claim under 15 U.S.C. § 1681o ). Plaintiff also claims that Defendants' conduct caused him to suffer severe anxiety and panic attacks, and that he ultimately sought professional help for these conditions in March 2018. (Compl. ¶ 190). Courts in this District have held that emotional distress damages constitute actual damages under the FCRA. E.g. Smith v. E-Backgroundchecks.com, Inc., 81 F.Supp.3d 1342, 1346-47 (N.D. Ga. 2015) (holding that plaintiff's testimony of emotional harm was sufficient to create a question of fact for the jury in an FCRA case); King, 452 F.Supp.2d at 1281 ; Moore v. Equifax Info. Servs. LLC, 333 F.Supp.2d 1360, 1365 (N.D. Ga. 2004) (holding that "damages for mental distress are recoverable under the FCRA even if the consumer has suffered no out-of-pocket losses"). Although not reaching the issue, the Eleventh Circuit has acknowledged that sister circuits have found that emotional harm permits the recovery of actual damages under the FCRA even in the absence of physical or pecuniary damage. See Levine, 437 F.3d at 1124-25. Thus, assuming arguendo that Defendant's argument was correct, none of Plaintiff's claims under the FCRA would be properly dismissed at this stage.
In addition, Defendants' contention that Caliber and Fairway obtained Plaintiff's credit reports for a commercial purpose is based on facts not contained in Plaintiff's Complaint. Plaintiff's complaint states that: "Plaintiff has been looking to purchase a home in 2018." (Compl. ¶ 184).
*1338 Plaintiff alleges that he was then denied preapproval and prequalification by two different lenders due to the reporting of the Ocwen tradeline. (Compl. ¶¶ 184, 186-189). Ocwen alleges in its Motion to Dismiss that Plaintiff is a real estate investor and owned at least ten other properties in Brevard County. (Doc. 13-1, at 2-3). Those facts are not included in Plaintiff's Complaint. When evaluating a motion to dismiss, the Court must construe all allegations in the light most favorable to Plaintiff. Mills v. Foremost Ins. Co., 511 F.3d 1300, 1303 (11th Cir. 2008). And subject to limited exceptions, the Court may not consider facts outside the pleadings without converting the motion to one for summary judgment. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005). The decision lies fully within the Court's discretion. Jones v. Automobile Ins. Co., 917 F.2d 1528, 1531-32 (11th Cir. 1990). This Court declines to convert Ocwen's Motion to Dismiss to a motion for summary judgment in order to consider Ocwen's allegations about Plaintiff's motivation for wanting to buy a house.
It is also premature to determine whether Caliber and Fairway obtained "consumer reports" about Plaintiff under the FCRA. According to the Eleventh Circuit in Yang v. Gov't Emps. Ins. Co., 146 F.3d 1320 (11th Cir. 1998), the credit report can be a consumer report if it is "used or expected to be used or collected in whole or in part" for any of the purposes described in sections 1681a(d) or 1681(b). Id. at 1324 (holding that the report obtained was a consumer report because it was originally collected by Equifax for the purpose of evaluating a consumer's credit worthiness, regardless of how the creditor actually used the information). Thus, the case is ripe for further factual development about the ultimate use, expectation of use, and reason for compilation of the two reports in question. Id. (holding that the information produced would be a consumer report if it meets any one of these three components); accord Dodgson v. First Advantage Background Servs. Corp., No. 1:16-CV-1894-ODE-JSA, 2018 WL 1807010, at *7-9 (N. D. Ga. Feb. 1, 2018), adopted by 2018 WL 1807014 (holding that, under Yang and the FCRA's plain language, "if the information was originally collected for a purpose contemplated by the FCRA, then the report qualifies as a consumer report ... so long as it otherwise meets the requirements of the definition"). Therefore, the Court RECOMMENDS that Defendant's Motion to Dismiss be DENIED to the extent it relies on the argument that the alleged credit denials were not based on consumer reports.
C. Plaintiff's FCRA Section 1681b"Permissible Purpose" Claim
Plaintiff alleges Ocwen ordered a consumer report from Experian on December 1, 2017, but had no permissible purpose for doing so under the FCRA. (Compl. ¶¶ 124-125). Ocwen contends that it was authorized to access Plaintiff's credit report because it is the servicer of Plaintiff's mortgage loan. (Doc. 13-1, at 14). Ocwen argues the Settlement Stipulation did not eliminate the debt, but instead confirmed that "the note is a valid and enforceable obligation." (Id. ). Further, an agreement to waive the deficiency balance is not tantamount to elimination of the debt; it is an agreement not to seek a deficiency judgment after the completion of a foreclosure sale. (Id. at 15-16). Because Plaintiff's mortgage was never foreclosed, Ocwen is still servicing Plaintiff's delinquent mortgage account. (Id. at 17). And as the mortgage servicer, Ocwen argues it could access Plaintiff's consumer report for "review or collection of an account"
*1339 under Section 1681b(a)(3)(A), and because it "has a legitimate business need for the information" either "in connection with a business transaction that is initiated by the consumer" or "to review an account to determine whether the consumer continues to meet the terms of the account" under Section 1681(b)(a)(3)(F). (Id. ).
Plaintiff responds that the Complaint contains sufficient facts to suggest that Ocwen impermissibly obtained his credit report, and analogizes to a case recently decided in this District, Ruk v. Crown Asset Mgmt., LLC, No. 1:16-CV-3444-LMM-JSA, 2017 WL 3085282 (N.D. Ga. Mar. 22, 2017), adopted by 2017 WL 3085686. (Doc. 20, at 9-11). In Ruk, the plaintiff alleged that she did not have an account with the defendant because the account had been discharged in a Chapter 7 bankruptcy case. Ruk, 2017 WL 3085282, at *1. The court held that the plaintiff's allegations in Ruk were sufficient for her Section 1681b claim to survive a motion to dismiss. Id. at *9-11. Like the plaintiff in Ruk, Plaintiff contends that he did not have an account with Ocwen at the time it obtained his Experian report. (Doc. 20, at 10). Plaintiff points out that his allegations of an impermissible purpose are more than conclusory, citing the following facts: Plaintiff has not made a payment since April 2008, the Settlement Stipulation released him from any debt or deficiency judgment, and Ocwen obtained his credit report within days of receiving a copy of his disputes from Equifax and TransUnion. (Id. at 9-10). Plaintiff argues these facts support an inference that Ocwen obtained his Experian report to investigate the disputes it received from Equifax and TransUnion, which is not a permissible purpose. (Id. at 11).
Plaintiff also disagrees with Ocwen's interpretation of the Settlement Stipulation, asserting that it released Plaintiff from any liability for the mortgage debt. (Id. at 11-13). In the Settlement Stipulation, Ocwen agreed to "accept the property and/or any amounts received from the foreclosure sale as full consideration of the debt owing it." (Doc. 20, at 13). Although Plaintiff argues Ocwen's justification for obtaining Plaintiff's credit report is too fact intensive to consider on a motion to dismiss, Plaintiff nevertheless addresses the merits of each permissive purpose claimed by Ocwen. (Id. at 13-15). First, Section 1681b(a)(3)(A) does not apply because Plaintiff had not applied for an extension of credit with Ocwen when it pulled his report in 2017. (Id. at 13-14). In addition, Ocwen could not have obtained Plaintiff's credit report for "review or collection of an account" because Plaintiff contends that he has no account with Ocwen. (Id. at 14-15). For the same reason, Ocwen did not have a "business need for information ... in connection with a business transaction initiated by the consumer; or ... to review an account to determine whether the consumer continues to meet the terms of the account." (Id. at 15).
In its Reply, Ocwen asserts that Plaintiff's failure to make any payment since 2008 has no effect on the continued existence of the debt. (Doc. 23, at 11). Similarly, the Settlement Stipulation did not terminate the parties' relationship or eliminate the debt; on the contrary, it confirmed that the relationship would continue to exist until a foreclosure occurred. (Id. ). A foreclosure would have to occur before there could be any deficiency to waive pursuant to the Settlement Stipulation. (Id. ). Ocwen also asserts that a creditor may access a credit report to confirm that a closed account is being reported accurately, citing to a Fifth Circuit case. (Id. at 11-12). Ocwen distinguishes Ruk because it involved a Chapter 7 bankruptcy, where a discharge does immediately release the debtor from his or her obligation *1340 to make payments. (Id. at 12). Because this is a mortgage debt, even if Plaintiff's personal liability had been discharged in a Chapter 7, the bankruptcy would not eliminate the lien associated with the mortgage. (Id. at 12-13). Defendant also notes that an Eleventh Circuit case Plaintiff relies on, Levine, holds that the holder of a closed account who obtains a credit report does not commit a willful violation. (Id. at 13).
The FCRA prohibits a person from using or obtaining a consumer report without a permissible purpose. 15 U.S.C. § 1681b(f). Bringing a claim under this section requires proof "(i) that there was a consumer report, (ii) Defendant obtained it, (iii) Defendant did so without a permissible statutory purpose, and (iv) Defendant acted with the specified culpable mental state." Davis v. Capital One Auto Fin., No. 1:17-cv-1706-WSD, 2017 WL 4129647, at *2 (N.D. Ga. Sept. 18, 2017) (citations omitted). Ocwen raises two arguments in favor of dismissal, both of which address the third prong. First, because it was Plaintiff's servicer, it was permitted to obtain Plaintiff's credit report. (See Doc. 13-1, at 13-17). Second, even if Ocwen obtained the Experian report to confirm that the account was being reported accurately, that constitutes a permissible purpose under the FCRA. (See Doc. 23, at 11-12).
As suggested by Defendant, a creditor with whom Plaintiff has a current account is more likely to have a permissible purpose for accessing a credit report. For example, entities with whom Plaintiff has a current account are "are permitted to use his report to ensure that he 'continue[d] to meet the terms of [his] account.' " Rumbough v. Experian Info. Sols., 625 F. App'x 224, 226 (11th Cir. 2015) (quoting 15 U.S.C. § 1681b(a)(3)(F) ). The law is less clear on whether former creditor may pull a credit report after the account is closed. See Levine, 437 F.3d at 1122 (noting the difference in opinion about whether the FCRA prohibits the sale of credit reports to former creditors whose accounts are closed and paid in full).
Ocwen is correct that Plaintiff's failure to make a payment on the account since 2008 has no bearing on whether the debt is still outstanding. Plaintiff admits that the account has not been paid in full. (Compl. ¶¶ 17, 18). As the parties seem to agree that no foreclosure had occurred on December 1, 2017, the only reason why the debt would have ceased to exist is by virtue of the Settlement Stipulation.[3] The Settlement Stipulation, between Deutsche Bank and Plaintiff, was agreed to in December 2014 as the intended resolution of the foreclosure lawsuit brought by Deutsche Bank in 2008. (Compl. ¶¶ 20, 28). In the agreement, Deutsche Bank and Plaintiff stipulate that the Note associated with the mortgage loan "is a valid and enforceable obligation." (Doc. 1-2, at 1). Plaintiff "withdraws any affirmative defenses and/or counter-claims, if any, raised in their answer(s) and waives all defenses to the allegations set forth in [Deutsche Bank's] Complaint." Plaintiff also "consents to the entry of an in rem final judgment of foreclosure and hereby waives any rights he may have, or later acquire, to object to the foreclosure sale or to otherwise impede or delay the issuance of the Certificate of Title in favor of the purchaser *1341 at the sale." (Id. at 2). In exchange, Deutsche Bank "agrees to accept the property and/or any amounts received from the foreclosure sale as full consideration of the debt owing it and agrees not to seek a deficiency judgment against the Defendant nor to pursue any claim on the promissory note executed by the Defendant in exchange for this consent to judgment." (Id. ).
The plain language of the agreement does not suggest the immediate elimination of the entire mortgage loan, but that Deutsche Bank would forgive any amounts still outstanding after obtaining either the property or the proceeds from a foreclosure sale. Deutsche Bank's promise not seek a deficiency judgment is a promise not to take future action, as its right to seek a deficiency judgment would not ripen until the property were sold at a foreclosure sale. See Bonita Real Estate Partners, 222 So.3d 647, 652 (Fla. Dist. Ct. App. 2017) ("A deficiency decree is one for the balance of the indebtedness after applying the proceeds of a sale of the mortgaged property to such indebtedness."); Aluia v. Dyck-O'Neal, Inc., 205 So.3d 768, 775 (Fla. Dist. Ct. App. 2016) (holding that a plaintiff seeking a deficiency judgment must show entry of a final judgment of foreclosure, sale of the foreclosed property, and issuance of a certificate of title); Empire Developers Grp. v. Liberty Bank, 87 So.3d 51, 53 (Fla. Dist. Ct. App. 2012) (nothing the deficiency is calculated by the total debt owed minus the fair market value of the property as of the date of the foreclosure sale). Thus, as it appears that no foreclosure sale has occurred, the condition precedent to Deutsche Bank waiving the deficiency has yet to be fulfilled.
Ocwen also agreed in the Stipulated Settlement "not to pursue any claim on the promissory note." (Doc. 1-2, at 2). Even if this promise were construed to be distinct from the promise not to seek a deficiency judgment,[4] it is not tantamount to an immediate elimination of the mortgage debt, but is a promise not to pursue one form of recourse available in the event of a borrower default. In the case of a mortgage, that does not mean that the borrower is excused from making payments. The lien associated with Plaintiff's mortgage loan would have still encumbered the property on December 1, 2017, as it had not been extinguished by a foreclosure sale. Thus, if mortgage payments continued to go unpaid, a mortgage lender could still collect on the debt by foreclosing on the property without also "pursuing a claim on the promissory note." Such a situation would be closely analogous to a debtor who receives a bankruptcy discharge of his or her mortgage debt. Although a debtor's personal liability on a promissory note can be discharged in a bankruptcy case, the lien generally remains on the property. See Germain v. Bank of America, N.A., No. 13-cv-676-bbc, 2014 WL 5802018, at *6 (W.D. Wis. Nov. 8, 2014) ("After a chapter 7 discharge, the consumer is not personally liable for the loan, but he or she still "owes" the lender in the form of the property (the collateral)"). If the borrower does not keep the mortgage payments current, the property can still be foreclosed and the proceeds applied toward the debt.[5]
The servicer of a mortgage loan secured by a lien on Plaintiff's property can obtain a credit report to review the *1342 account, even if the borrower is no longer liable on the promissory note. See Farrin v. Nationstar Mortgage LLC, No. 15-cv-102-LM, 2016 WL 6407841, at * 8-9 (D. N.H. Oct. 28, 2016) (holding that the discharge of a mortgage debt does not end the relationship between the plaintiff and his lender); Radney v. Bayview Loan Servicing, LLC, No. 15-cv-9380, 2016 WL 3551677, at *4 (N.D. Ill. June 30, 2016) (granting motion to dismiss FCRA claim because Plaintiff did not persuade the court that his relationship with mortgage company was severed by a bankruptcy discharge); Helman v. Udren Law Offices, No. 0:14-CV-60808, 2015 WL 1565335, at *6 (S.D. Fla. Apr. 8, 2015) (holding that the lender could use a borrower's credit report to review the account, but denying to dismiss the FCRA claim because more facts were needed about the status of plaintiff's obligations and defendant's purpose for reviewing the account); Germain v. Bank of America, N.A., No. 13-cv-676-bbc, 2014 WL 5802018, at *6 (W.D. Wis. Nov. 8, 2014) (holding that the discharge of a mortgage debt does not extinguish a lender's right to obtain consumer reports). Therefore, as the servicer of Plaintiff's mortgage loan, we evaluate Ocwen's actions as those of a current creditor.
Ocwen's status as a current creditor does not automatically result in a finding that Ocwen obtained Plaintiff's credit report for a permissible purpose. While Plaintiff's Complaint does not clearly state the alleged impermissible purpose, in his response brief, Plaintiff asks the Court to infer that Ocwen obtained the credit report to investigate Plaintiff's dispute. (Doc. 20, at 11, 15). Plaintiff bases this inference on the proximity of the two events. (Id. ). Assuming the dates alleged in Plaintiff's Complaint are accurate, Ocwen obtained the Experian report nine or ten days after Plaintiff sent dispute letters to Equifax and TransUnion. (Id. ¶¶ 84, 105, 124, 125). The Court finds that such close proximity is sufficient to raise a plausible inference that Ocwen's motivation for obtaining Plaintiff's Experian report was in response to Plaintiff's dispute letters.
If indeed this was Ocwen's purpose, the Court must determine whether it was a permissible purpose as a matter of law so as to preclude Plaintiff's claim. Plaintiff states that obtaining credit reports in response to dispute letters is not a permissible purpose, but cites no authority. (See Doc. 20, at 15). Ocwen cites the Fifth Circuit in Wilting v. Progressive Cty. Mut. Ins. Co., 227 F.3d 474 (5th Cir. 2000), which found that it was permissible for a former creditor to obtain a credit report to ensure there were no adverse notations following a settlement agreement that required the creditor to remove adverse references. Id. at 476. Several courts have held that a creditor can properly access a consumer report where it is sued or threatened with litigation related to the credit reporting. Spence v. TRW, 92 F.3d 380, 383 (6th Cir. 1996) (finding that the "legitimate business need" under Section 1681b(3)(E) was the need to prepare a defense to the lawsuit); Kowall v. GMAC Mortg., LLC, No. 11-15454, 2012 WL 884851, at *3-5 (E.D. Mich. Mar. 15, 2012) (dismissing FCRA claim because a former creditor had a "legitimate business need" to obtain a credit report to confirm the truth of the allegations that when threatened with litigation over its reporting of a debt). A District Court in Massachusetts approved of a defendant obtaining several credit reports to verify that a credit reporting agency was reporting the debt plaintiff owed on a property when the parties were in a civil proceeding for partition and accounting of the property. Zeller v. Samia, 758 F.Supp. 775, 781-82 (D. Mass. 1991) (holding these inquiries were appropriate to aid in debt collection and because *1343 of a legitimate business need for the information).
Here, Plaintiff asks the Court to infer that Ocwen obtained his Experian report because Ocwen received information that the mortgage account should be deleted from his Equifax and TransUnion reports due to its age. Even assuming the truth of Plaintiff's allegations, Plaintiff fails to state a claim for an FCRA violation under 15 U.S.C. § 1681b. Drawing on the reasoning of the cases summarized above, obtaining a credit report after being notified of reporting errors is a permissible purpose under the circumstances. Ocwen has a legitimate interest in ensuring its credit reporting is accurate where a consumer's dispute could result in liability under the FCRA. If a furnisher like Ocwen identifies an error in its reporting during its investigation, it is required to notify the other nationwide credit reporting agencies. 15 U.S.C. § 1681s-2(b)(1)(D). Thus, if Ocwen identified an error on Plaintiff's Equifax report, Ocwen would be required to correct the same error if it appeared on Plaintiff's TransUnion report. In light of Plaintiff's dispute, Ocwen had a legitimate business need to investigate and review the account to determine whether its reporting was consistent and accurate across all three major credit reporting agencies.
Furthermore, the allegations in Plaintiff's Complaint support a permissible purpose. For example, the nonpayment of a debt for nine years would likely result in efforts to collect the debt, a permissible purpose under the FCRA. (See Compl. ¶ 72). Indeed, Ocwen sued Plaintiff four months after obtaining the credit report seeking to foreclose the property. (Compl. ¶ 178). See Middlebrooks v. Sacor Fin., Inc., 2017 WL 8186719, at *4 (N.D. Ga. Aug. 28, 2017) (considering that the allegations in the complaint suggested a permissible purpose in holding that plaintiff failed to state an FCRA claim).
Merely stating that Ocwen had no permissible purpose to obtain Plaintiff's Experian report is insufficient to state a claim for relief. See e.g. Jairam v. Capital One Bank USA, N.A., No. 1:17-CV-02447-TCB-CMS, 2018 WL 1869819, at *3 (N.D. Ga. Feb. 12, 2018) (finding that the plaintiff's claim that she did not have any business dealings with the defendant was inadequate to state a claim under Section 1681b(f) ), adopted by 2018 WL 1869823 ; McKernan v. Diversified Consultants, Inc., No. 6:14-cv-2126-Orl-22KRS, 2015 WL 12426148, at *1, 3 (M.D. Fla. July 2, 2015) (holding that the plaintiff's allegations that she had no business with the defendant and did not support an impermissible purpose claim). And the alleged justification for Ocwen obtaining Plaintiff's Experian report, investigating and responding to Plaintiff's disputes, is a permissible purpose under the circumstances that does not support a Section 1681b claim against Ocwen. Therefore, the Court RECOMMENDS that Ocwen's Motion to Dismiss be GRANTED as to Plaintiff's claim under Section 1681b.
D. Plaintiff's FCRA Section 1681s-2(b) Claim
As Plaintiff points out, Ocwen does not address Section 1681s-2(b) in its Motion to Dismiss. (See Doc. 13-1). However, Plaintiff's Complaint makes it difficult to surmise precisely what violations of the FCRA Plaintiff alleges against each Defendant. The only place in the Complaint where Plaintiff clearly alleges that Ocwen violated Section 1681s-2(b) is in a footnote in the portion of the Complaint identifying the parties. (Compl. ¶ 12, n.1). In the section where Plaintiff lists his claims, instead of identifying the specific sections of the FCRA that each Defendant violated, Plaintiff *1344 generically alleges negligent and intentional violations of the Fair Credit Reporting Act. (Compl. ¶¶ 191-214).
Nevertheless, in Plaintiff's Reply, Plaintiff argues he has stated a claim under Section 1681s-2(b) and recites the relevant facts in the Complaint. (Doc. 20, at 2-8). Plaintiff cites to several authorities holding furnishers liable for inaccurately reporting on an obsolete account after receiving a dispute from the consumer. (Id. at 7-8). In Ocwen's Reply, it argues Plaintiff's Section 1681s-2(b) claim is due to be dismissed because Plaintiff failed to allege any factual inaccuracy in Ocwen's reporting. (Doc. 23, at 4). Ocwen also argues Plaintiff's claim is predicated on a misunderstanding of the terms of the mortgage and the meaning of a deficiency waiver. (Id. at 4-7). In addition, Ocwen contends that at best, Plaintiff's claim depends on a favorable legal interpretation of the Settlement Stipulation, and a question of law does not constitute a factual inaccuracy necessary to support an FCRA claim. (Id. ).
Under the FCRA, after receiving notice of a dispute from the credit reporting agency, a furnisher must:
(1) "conduct an investigation with respect to the disputed information"; (2) "review all relevant information provided by the [CRA]" in connection with the dispute; and (3) "report the results of the investigation to the [CRA]." ... Should the investigation determine that the disputed information is "inaccurate or incomplete or cannot be verified," the furnisher must "as appropriate, based on the results of the reinvestigation promptly ... modify [,] ... delete [or] permanently block the reporting" of that information to CRAs.
Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1301 (11th Cir. 2016) (internal citations omitted). A furnisher's investigation under Section 1682s-2(b) must be reasonable, which often varies depending on the circumstances of the case. Id. at 1301-02.
Ocwen is correct that Plaintiff's Section 1681s-2(b) claim "cannot survive a motion to dismiss without some supportable allegation that the reported information is inaccurate or incomplete." Leones v. Rushmore Loan Mgmt. Servs., Fed.Appx. 897, 901 (11th Cir. 2018). Here, the key inaccuracies alleged by Plaintiff are that the account was improperly re-aged and should not have been reporting at all because the first delinquency occurred more than seven years ago, and that Plaintiff did not owe any payments after entering into the Settlement Stipulation. (Compl. ¶¶ 56, 62-64, 75, 80, 82, 103, 121). The Court has already addressed and dismissed the argument that Plaintiff's obligation to make payments was eliminated by the Settlement Stipulation. At best, even if Ocwen agreed not to sue Plaintiff on the Note, Ocwen still had the right to collect payments and foreclose if Plaintiff was in default. Therefore, the Court will turn to Plaintiff's argument that the credit reports were inaccurate because the mortgage account should have been removed due to its age.
Ocwen does not contest that the mortgage account should have been removed seven years after it became delinquent, but instead argues that is not liable for a re-aging claim because Section 1981c applies only to credit reporting agencies. (Doc. 13-1, at 18; Doc. 23, at 7). However, Ocwen could have plausibly caused the mortgage account to reappear on Plaintiff's credit reports by reporting an inaccurate date of delinquency, as alleged by Plaintiff. (Compl. ¶¶ 25, 31, 32, 101, 118). Plaintiff's disputes fairly put Ocwen on notice that the account had not been paid since 2008, which should have caused it to be removed from Plaintiff's credit report. (Compl.
*1345 ¶¶ 85, 106, 127, 156). Nothing precludes Plaintiff bringing a claim against Ocwen under Section 1681s-2(b) for failing to correct the error in the reported delinquency date following the dispute. See Seamans v. Temple Univ., 744 F.3d 853 (3rd Cir. 2014) (denying defendant's summary judgment motion on a Section 1861s-2(b) claim where the consumer disputed the reporting of an old debt and the furnisher failed to report the date of delinquency); Cunningham v. Ocwen Fin., No. 3:12-cv-0440, 2014 WL 688229, at *2 (M.D. Tenn. Feb. 20, 2014) (denying a motion to dismiss because the consumer's claim that the furnisher "knowingly reinserted inaccurate information regarding a loan account to show that it was delinquent falls within the plain language of Section 1681s-2(b)(1)(E)"). While Plaintiff cites to Seamans, Cunningham, and a number of other authorities in its responsive brief, Ocwen does not distinguish them or provide contrary authority. (See Doc. 23, at 9).
Next, Ocwen contends that the mortgage can be properly included in Plaintiff's consumer report under 15 U.S.C. § 1681c because it is a credit transaction involving a principal balance of more than $ 150,000. (Doc. 13-1, at 19-20). Section 1681(c)(b)(1) provides certain exemptions to the requirement that CRAs must remove obsolete accounts, including "in the case of any consumer report to be used in connection with - (1) a credit transaction involving, or which may reasonably be expected to involve, a principal amount of $ 150,000 or more." 15 U.S.C. § 1681(c)(b)(1). As Plaintiff discussed above, however, Plaintiff's claim against Ocwen lies in Section 1681s-2(b), not Section 1681c. Even if Plaintiff's consumer report was intended to be used in connection with a credit transaction involving more than $ 150,000, which assumes facts not currently in the record, that would not absolve Ocwen from liability for failing to investigate a disputed inaccuracy. As a result, the Court RECOMMENDS that Ocwen's Motion to Dismiss be DENIED as to Plaintiff's Section 1681s-2(b) claim.
PLAINTIFF'S MOTION TO FILE SURREPLY
Plaintiff seeks leave to file a surreply. (Doc. 24). Plaintiff requests permission to address Ocwen's arguments about Section 1681s-2(b), three new authorities, and the contention that Plaintiff did not allege a factual inaccuracy. (Id. at 2). Setting aside the Court's observation that Defendant's initial failure to address the Section 1681s-2(b) claim may have been because the Complaint did not clearly identify the claims being brought against each Defendant, the Court does not require any additional briefing on the Section 1681s-2(b) claim. Although Defendant did not directly address the Section 1681s-2(b) claim in its opening brief, Plaintiff's responsive brief nevertheless spent seven pages informing the Court why it adequately stated a claim under that section of the FCRA and reciting the relevant factual allegations. (Doc. 20, at 2-8). The issues Ocwen raised related to the interpretation of the Settlement Stipulation had already been elsewhere addressed by the parties. (Doc. 13-1, at 15-17; Doc. 20, at 11-13). The Court need not entertain an endless volley of briefing unless a valid reason for such additional briefing exists. Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005) (denying motion for surreply because the court was "apprised of Plaintiff's position, factually and legally" and Plaintiff did not demonstrate that a particular argument warranted a surreply). As a result, the Court DENIES Plaintiff's Motion for Leave to File Surreply. (Doc. 24).
*1346 CONCLUSION
The Court RECOMMENDS that Ocwen's Motion to Dismiss be GRANTED IN PART and DENIED IN PART (Doc. 13) and DENIES Plaintiff's Motion to File Surreply (Doc. 24).
SO REPORTED AND RECOMMENDED this 15th day of February, 2019.

The court conducts a de novo review of those findings in the R & R to which Ocwen has objected. 28 U.S.C. § 636(b)(1)(C). Because the R & R addressed Ocwen's motion to dismiss under Rule 12(b)(6), the standard for that motion applies and the court takes the facts alleged in the complaint as true. Resnick v. AvMed, Inc. , 693 F.3d 1317, 1321-22 (11th Cir. 2012). Further, the court will address only those factual allegations relevant to Ocwen's objections.

Other than the specific objections discussed herein, Ocwen also makes a general objection that the magistrate judge should have recommended granting Ocwen's motion to dismiss in its entirety. Such a general objection is not properly before the court and will not be considered. Marsden v. Moore , 847 F.2d 1536, 1548 (11th Cir. 1988).

As noted above, the only other objection that Ocwen makes is a general objection that the R & R did not recommend granting Ocwen's motion to dismiss in its entirety. Such a general objection is not properly before the court and will not be considered. Marsden , 847 F.2d at 1548.

The facts are derived from Plaintiff's Complaint. On a Motion to Dismiss, the Court assumes all facts in the Complaint are true. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Plaintiff's Complaint alleges the second dispute was sent on January 8, 2017, which both the Court and Ocwen assume was a typographical error that was intended to be January 8, 2018. (Doc. 13-1, at 6 n.1).

The Court will consider the Settlement Stipulation, attached to the Complaint as Exhibit B, because it is central to Plaintiff's claims, and neither party challenges its authenticity. Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). Further, the Court can also take judicial notice of the Settlement Statement, as a document filed in a Florida state court, it is a public record. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-1278 (11th Cir. 1999).

The Court finds this interpretation unlikely. Under Florida law, agreeing to a suit for a deficiency is often referred to as a suit on the balance on the note. E.g. Rojas v. Law Offices of Daniel C. Consuegra, 142 F.Supp.3d 1206, 1213 (M.D. Fla. 2015).

Further bolstering this conclusion is Plaintiff's own admission that Ocwen filed a lawsuit against him in April 2018 seeking to foreclose the mortgage. (Compl. ¶ 178).